OPINION
This matter presents a timely appeal from a decision rendered by the Noble County Common Pleas Court finding defendantappellant, John L. Williams, guilty of burglary in violation of R.C. 2911.12 (A) (2).
On February 24, 1997 Byron and Rama Steen (the victims) came home to discover it had been burglarized. (Tr. 32). Upon inspection of the home, the victims discovered that more than five hundred dollars was taken. (Tr. 34). After the Noble County Sheriff's office received information pertaining to the burglary, they questioned juveniles Justin Leake (Leake) and Ricky Antill (Antill), who were both age twelve. (Tr. 94). The sheriff's office obtained confessions from Leake and Antill, stating they participated as lookouts while appellant burglarized the victims' residence. (Tr. 103). Both of the youths' parents were present when they were questioned. (Tr. 96).
After obtaining the confessions from Leake and Antill, the sheriff's office arrested appellant, and incarcerated him for several hours. (Tr. 99). Appellant finally agreed to make a statement and proceeded to confess to his involvement to the crime. All three of the confessions were consistent. (Tr. 100-102)
On February 10, 1998, appellant filed a motion for Leave to File Notice of Alibi Instanter, on information received from William Palmer (Palmer) that appellant was in Columbus with him on the day of the burglary. (Tr. 1). Palmer offered a gas station receipt, dated February 24, 1997 indicating that somebody purchased ten dollars worth of gas from the Buckeye Lake, Ohio, Shell Station. (Tr. 4). Immediately prior to trial, there was witness testimony offered by Palmer, appellant, and his counsel, about the alibi defense. (Tr. 1-12). The trial court prohibited any testimony on alibi. (Tr. 15).
The matter proceeded to trial on February 10, 1998, and Leake testified consistently with his earlier statement. (Tr. 38). Prior to testifying, Antill advised the prosecutor that his recollection of the events was different than his previous statement. (Tr. 58). The prosecutor then strived to have Antill declared a hostile witness, so that he could ask leading questions. (Tr. 58). The trial court adopted a wait and see approach, stating that if Antill's testimony was opposite to his prior statement, then leading questions could be asked. (Tr. 59-60). After Antill testified that he did not know what had happened at the victim's residence, and that he gave the confession only after being threatened with reform school, the prosecutor began reading from his prior statement, asking Antill whether he remembered answering the questions the way they appeared on his statement. (Tr. 65-72).
Plaintiff-appellee, the State of Ohio, also presented another witness, Gary Meek (Meek), who was a convicted felon. (Tr. 124). Meek testified that appellant told him that he committed the burglary. (Tr. 128).
Antill's mother then took the stand and attempted to testify that, when they left the sheriff's office, her son told her that he lied in his confession because of his fear of going to reform school. (Tr. 161). The trial court prevented this testimony stating that it was inadmissible hearsay. (Tr. 161).
Appellant then took the stand and explained why he gave the confession. Although he was able to explain that he had a fear of going to prison and being raped if he did not confess, the trial court did not permit him to testify about individual statements said to him by other people in the holding cell. (Tr. 175-178)
At one point during deliberations, the jury came back into the court and advised that they could not reach a decision. The court then gave them a Howard charge, and they deliberated further. (Tr. 221-223). The jury then returned and rendered a verdict finding appellant guilty. (Tr. 224). The trial court sentenced him to four years of incarceration and this appeal followed.
Appellant sets forth five assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The trial court erred by admitting Ricky Antill's statements to Deputy Presnell because those statements were inadmissible hearsay."
Appellant contends that the trial court committed reversible error in allowing Antill's written statement into evidence because it was hearsay. Under Evid.R. 801 hearsay is defined as:
 "(A) Statement. A "statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
 "(B) Declarant. A "declarant' is a person who makes a statement.
 "(C) Hearsay. "Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
Appellant recognizes an exception to the hearsay rule under Evid.R. 804 (B), which states:
 "(B) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * *
 "(3) Statement Against Interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
Appellant contends that the prosecuting attorney never asked to have Antill be declared unavailable. Since the trial court never declared Antill unavailable, it is argued, that this exception does not apply. Appellant further argues that even if the trial court would have found Antill unavailable, then under Williamsonv. U.S. (1994), 512 U.S. 594, only the parts of the statement which are self-inculpatory are admissible. Appellant argues that the Ohio Supreme Court, in State v. Young (1983), 5 Ohio St.3d 221, has adopted the holding of Williamson. R.C. 2945.83 (C) provides:
 "No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
* * *
 "(C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby."
This has been incorporated into Crim.R. 33 (E) (3). Also, the Ohio Supreme Court in State v. Hymore, 9 Ohio St.2d 122, 128, discussed the discretion of a trial court regarding the admission and exclusion of evidence stating:
 "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere."
Appellant is correct that if Antill's statement was offered into evidence to prove the truth of the matter asserted, such a statement would be hearsay. Also, since there has been no showing of unavailability of the witness, the statement against interest exception for hearsay under Evid.R. 804 (B) does not apply.
Although the hearsay exception does not apply, the statement is not hearsay if it is offered to attack credibility of the witness, as it would not be offered to prove the truth of the matter asserted. Here, the prosecuting attorney properly asked leading questions of Antill regarding his prior statement given to the sheriff's office. Evid.R. 607 permits a party to attack the credibility of its own witnesses under certain situations stating:
 "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."
Surprise is best defined in State v. Moore (1991), 74 Ohio App.3d 334,343, where the court stated:
 "The existence of surprise is a factual issue left to the trial court's discretion * * * and surprise may be shown if the witness's trial testimony is materially inconsistent with his prior written or oral statement, and counsel lacked reason to believe that the witness would recant when called to testify * * *
Affirmative damage is best defined in State v. Blair (1986),34 Ohio App.3d 6, 9, where the court stated:
 "* * * Affirmative damage occurs if the party's own witness testifies to facts that contradict, deny, or harm that party's trial position. State v. Stearns (1982), 7 Ohio App.3d 11, 15, 7 OBR 12, 17, 454 N.E.2d 139, 144."
Here, the prosecuting attorney asked the trial court to allow him to ask Antill leading questions. The prosecuting attorney showed surprise in stating:
 "MR. YOUNG: I've just spoken with Ricky Antill, who is my intention to be my next witness. Back on August 29th, as the Court has probably heard of and aware of some statements were given to the Sheriff's department. I just talked with him briefly about that statement and he now denies each and every bit of it. Has a different outlook on life altogether than what I suspected as we came here today. And as such I request the permission to treat this subject, not necessarily as hostile so much as I request the ability to use some leading questions." (Tr. 58)
Mr. Young continued:
 * * * To my knowledge, when I came here today I had no reason to believe that Mr. Antill one actually was going to testify since he hasn't been through court, and two, if he did testify it would be to anything different than what was in the statement that he had given to the authorities back on August 29th." (Tr. 59).
Once Antill began testifying, it became apparent that he had taken an opposite position with regards to his previous statement. This testimony contradicted and harmed the prosecuting attorney's trial position, which shows affirmative damage. Blair, supra. Since it is within the trial court's discretion whether or not to allow leading questions to be asked of a party's own witness, and here there was a showing of surprise and affirmative damage, the trial court did not abuse its discretion in allowing the prosecuting attorney to ask leading questions.
With regards to the admission of Antill's statement into evidence, Evid.R. 613 (B) states:
 "Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require."
The Ohio Supreme Court in State v. Dick (1971), 27 Ohio St.2d 162, permitted the admission of a prior inconsistent statement since it was not offered for substantive evidence against the accused. In State v. Wright (1967), 11 Ohio App.2d 31, the court found that prejudicial error had been committed by the trial court in admitting a statement made to authorities. There the court found that the trial court used the statements for substantive purposes. Wright, supra.
In the case at bar, the prosecuting attorney gave Antill an opportunity to explain the statement made to the sheriff's department and he stated that it was given because he was threatened with reform school. (Tr. 71). Appellant's counsel was afforded an opportunity, and did, interrogate Antill regarding the statement given to the sheriff's department. (Tr. 82-89). Furthermore, the statement came into evidence because it, along with the leading questions offered by the prosecuting attorney, attacked the credibility of Antill. Therefore, the statements were not used for substantive purposes.
In addition, the statement given to the Sheriff's department and the leading questions asked of Antill attacked his credibility and were therefore not hearsay as they were not offered to prove the truth of the matter asserted. As such, the trial court did not abuse its discretion in admitting them.Hymore, supra.
Based upon the trial court correctly allowing the prosecuting attorney to ask leading questions of Antill, and the fact that these questions and the statement attacked the credibility of Antill and were not offered for substantive purposes, the trial court did not abuse its discretion and appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The trial court erred by excluding statements made to John Williams and Carol Antill because those statements were admissible."
Appellant first contends that it was prejudicial error for the trial court to exclude testimony from him that he was told by other persons in jail that if he did not confess, he would go to prison and be jumped and raped. (Tr. 175-176). Appellant claims that such a statement is not hearsay as it goes to his state of mind and is not offered to prove the truth of the matter asserted under Evid.R. 801 (C).
Appellant next contends that the trial court erred in excluding the statement Antill told his mother after leaving the sheriff's office that he made up the statement because he was scared. Appellant contends that this statement qualifies under Evid.R. 801 (D) (1) as a hearsay exemption. Evid.R. 801 (D) (1) states:
 "(D) Statements Which Are Not Hearsay. A statement is not hearsay if:
 "(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *"
Appellant contends that the statement of Antill to his mother was consistent with his earlier testimony. Furthermore, it is argued that the prosecuting attorney implied throughout his questioning of Antill that he was dishonest in giving his testimony, so this is the recent charge of fabrication which his mother's testimony rebuts.
Again it must be stated that absent an abuse of discretion, a reviewing court will not reverse a trial court's decision based upon the admission or exclusion of evidence. Hymore, supra.
Under Evid.R. 801 (C), the actual statements made by the other people in jail were not hearsay. Although the trial court erred in excluding these statements on the basis of hearsay, such error was harmless and appellant was not prejudiced by said error. Even though the specific comments made to appellant were excluded, appellant was able to testify regarding his state of mind in making the statement to the sheriff's office, when he testified as follows:
"MR. BLAKESLEE CONTINUING:
 "Q. Alright, John did you have conversation with an inmate?
"A. Yes, I did.
 "Q. After you had those conversations with the inmates what did you think was going to happen to you if you didn't give a statement?
"A. I thought I was going to go to prison.
 "Q. And after the conversations you had with those inmates what did you think was going to happen to you once you got to prison?
 "A. I thought I was going to get raped and beat up. I can't defend myself I've only got one arm." (Tr. 177-178).
Given the definition of hearsay under Evid.R. 801 (C) and appellant's ability to testify as to his state of mind, the trial court did not abuse its discretion in excluding the specific statements.
Appellant next argues it was error to exclude statements Antill made to his mother regarding his fear of going to reform school. A review of the record reveals that the testimony of Antill's mother was fully expressed to the jury before the prosecuting attorney entered an objection. (Tr. 161). After sustaining the objection, the trial court did not give the jury a curative instruction regarding this testimony. (Tr. 161).
Antill testified on direct examination, and again on cross-examination, that it was his fear of going to reform school which prompted his giving the statement to the sheriff's office. (Tr. 65, 89). His mother's testimony was cumulative in nature and did not fit within the exemption under Evid.R. 801 (D) (1) (b). The trial court did not abuse its discretion in excluding this evidence. Hymore, supra.
Based upon the fact that appellant was able to testify about his state of mind regarding his statement to the sheriff's office, and the fact that Antill himself was able to testify about his fear which caused him to give his statement, the trial court did not abuse its discretion and appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "The defendant's right to due process of law was violated by the prosecutor's misconduct."
Appellant argues the prosecuting attorney engaged in multiple instances of misconduct during the trial. First, appellant argues that the prosecuting attorney asked leading questions of one of his witnesses on direct examination. Appellant argues that this violated Evid.R 611 (C) which states:
 "(C) Leading Questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. * * *
Appellant contends that by asking leading questions of Meek, who was his own witness, the prosecutor engaged in misconduct and prejudiced appellant because, the prosecutor was putting words in the mouth of Meek.
This court discussed prosecutorial misconduct in State v. Poole
(1996), 116 Ohio App.3d 513, 524. stating:
 "The alleged misconduct of a prosecutor during trial cannot be made a ground of error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. * * * The effect of the alleged misconduct must be judged in the context of the entire trial. State v. Keenan
(1993), 66 Ohio St.3d 402, 410. * * *", citing Donnelly v. DeChristoforo (1974), 416 U.S. 637, * * * One factor relevant to the due process analysis is whether the alleged misconduct was an isolated incident in an otherwise properly tried case. State v. Keenan, supra, at 410, * * *" In order to excuse a prosecutor's improper remarks, it must be clear beyond a reasonable doubt that, absent the remarks, the jurywould have found the defendant guilty. See State v. Maurer
(1984), 15 Ohio St.3d 239, 267, * * *
During Meek's testimony, defense counsel objected only once when the prosecuting attorney offered names of individuals who had threatened Leake, and the trial court sustained the objection. (Tr. 127). The trial court struck the statement and told the jury to disregard it. (Tr. 127). There were no objections as to the line of questioning of Meek. In State v.Williams (1977), 51 Ohio St.2d 112, 117, the Ohio Supreme Court stated:
 "* * * This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgement could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. * * * "Any other rule,' this court stated in State v. Driscoll (1922), 106 Ohio St. 33, * * * "would relieve counsel from any duty or responsibility to the court and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel which enjoins upon counsel the duty to exercise dingence and to aid the court rather than by silence mislead the court into commission of error'" (Additional citations omitted)
Since defense counsel did not object to the prosecuting attorney's asking of leading questions, appellant may not now claim error. Williams, supra. Therefore, the first part of appellant's argument fails.
Appellant next argues that the prosecuting attorney acted improperly when he bolstered the credibility of his own witness, Meek, by having a deputy testify that Meek had given accurate information on an unrelated theft charge, and by commenting on Meek's truthfulness during summation. Appellant contends that this violates Evid.R. 608, and prejudiced appellant because the jury was more likely to believe Meek's testimony.
Again, the record reveals that defense counsel failed to object to this line of questioning. Therefore, under Williams, appellant cannot now claim error. Furthermore, even if objected to, this line of questioning would have been proper under Evid.R. 608 (A) (2) which states:
 "(A) Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: * * * (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
During cross-examination of the deputy, the defense counse inquired into Meek's involvement in an unrelated crime. (Tr. 116-117). Defense counsel then began asking questions about a second, unrelated crime. (Tr. 117-118). When the prosecuting attorney objected to this line of questioning, the defense counsel responded:
 "MR. BLAKESLEE: Gary Meek, if he comes in to testify that my client told him that he committed this robbery, I have the right to impeach his credibility." (Tr. 118)
Defense counsel attempted to challenge the credibility of Meek by questioning him about his involvement in other crimes, and thus attacked the truthfulness of his character. Once, Meek's character was challenged, the prosecuting attorney, under Evid. R. 608 (A) (2) was free to bolster his credibility.
Comments in closing arguments are not evidence. The trial court properly instructed the jury before summation began that they were not evidence. (Tr. 202). Since defense counsel did not object to this line of questioning of Meek and the fact that the judge instructed the jury that arguments in summation are not evidence, the second part of appellant's argument fails.
Appellant next contends that the prosecuting attorney engaged in misconduct when he expressed his own opinion regarding the teacher's attendance taking, and again during his summation. The attendance evidence showed that Antill and Leake were in school the day of the burglary. The contested comment came when the prosecuting attorney stated:
 "Q. He's 5th grade. Kenny Harmon's 5th grade teacher. I remember him back when I was in high school. He wasn't the world's greatest taking attendance back then, I can remember that." (Tr. 155).
The second contested comment came during summation when the prosecuting attorney commented on his witness, Leake, stating:
 "* * * He sits up here at this stand and recounts for you what went on and when you asked him who went into Byron Steen's home. Is there any hesitation in what he says? He sat there and he points. Right there is the fellow that did it. He was honest. * * *" (Tr. 209)
Appellant correctly asserts that the prosecuting attorney could not input his own opinions during the trial. However, the trial court sustained both objections made to these statements. The trial court struck the first statement concerning the attendance and told the jury to disregard it. (Tr. 155). The prosecuting attorney then apologized for the second statement, made during summation, and the trial court stated that what he thought was not important. (Tr. 209). Therefore, neither of these statements prejudiced appellant.
Since both statements of the prosecuting attorney's opinion were corrected by the trial court, the third part of appellant's argument fails.
Appellant next contends that the prosecuting attorney acted improperly in badgering him during cross-examination, and by trying to have hearsay evidence admitted. Appellant contends that he was badgered during cross-examination regarding his fear of being raped when the prosecuting attorney inquired:
 "Q. But they really did terrify you while you were in there, they scared you?
"A. Yes.
 "Q. They scared you so much that last night you were out boring around at Central Ohio? Eric really terrified you. All was just one person that didn't.
 "MR. BLAKESLEE: Did he answer the question Judge?
 "COURT: Answer one question. Let him answer it.
"A. It wasn't Eric Carte doing the talking.
 "Q. Josh and Jason Davis are buddies are (sic) yours aren't they?
"A. No, sir.
"Q. Never been buddies of yours?
"A. No, sir.
 "Q. And Lafollete was in. The truth of the matter is when you went down to the jail they took you in and you went back to talk to the Sheriff and he told you we don't even need to take a statement from you, didn't he? We don't even need a statement from you. We'll just go ahead and lock you up. Isn't that what Landon said? That's exactly what they did, they went ahead and locked you up.
 "COURT: Whoa, whoa, let him answer the question.
 "MR. YOUNG: It didn't appear that he was going to." (Tr. 182-183).
Appellant next contends that the prosecutor engaged in misconduct in attempting to admit evidence which he knew was hearsay evidence.
An examination of the record shows that the trial court controlled the prosecuting attorney's questioning of appellant by interjecting its position and directing counsel to allow appellant to answer the questions posed. Also, the trial court did not admit the hearsay evidence, and the prosecuting attorney cannot be said to have committed misconduct by attempting to have such evidence admitted.
Since the court controlled the questioning of appellant and did not admit hearsay evidence, the fourth part of appellant's argument fails.
Based upon the fact that there were no objections to the asking of leading questions of the prosecuting attorney's witness nor the bolstering of his credibility, and the trial court's correcting statements regarding the prosecutor's personal opinions, and the trial court's controlling the prosecutor's questioning, appellant was not deprived of a fair trial under Poole. Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
 "The defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution."
Appellant argues that two instances during the trial denied him effective assistance of counsel. First, he argues that defense counsel failed to object to the introduction of Antill's statement to the sheriff's office. Appellant's argument is the same as stated in his first assignment of error. Appellant next contends that in failing to object to the prosecutorial misconduct, defense counsel was ineffective. This argument is the same as stated in appellant's third assignment of error.
The United States Supreme Court provided a standard for determining effective counsel in Strickland v. Washington (1984),466 U.S. 668, 669, paragraph 2 of the syllabus. That test is as follows:
 "2. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. * * *
 "(a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. * * *
 "b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. * * *"
The Ohio Supreme court adopted the Strickland test in Ohio v.Bradley (1989), 42 Ohio St.3d 136.
Appellant's arguments for ineffective counsel are based upon the arguments set forth in assignment of error one and three, which have been found to be without merit. Therefore, appellant's counsel was not deficient and appellant was not denied a fair trial under Stickland and Bradley.
Since appellant's claim of ineffective counsel is founded upon meritless assignments of error, appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "The defendant's conviction was against the manifest weight of the evidence."
Appellant first argues that the appellee's evidence was contradicted. He maintains that the testimony of Leake and Antill was contradicted by the fact that the school records indicate that the two were in school the day of the burglary. Appellant also maintains that the confessions of appellant and Antill were shown to be coerced and untrue, as Antill was threatened with reform school and appellant had a fear of going to prison and being raped. Also, appellant argues that two of appellee's witnesses, Leake and Meek, were impeached. Appellant contends Leake was impeached because, although he claimed to act as a lookout for the burglary, he could not identify the mode of entry into the victim's home. Furthermore, appellant argues that Meek was also impeached because his testimony was given with an understanding that he would not be convicted on an unrelated burglary. Therefore, Meek's testimony was unreliable. Appellant contends that all of this evidence taken together demonstrates that the jury found appellant guilty against the manifest weight of the evidence.
The Ohio Supreme Court discussed the issue of manifest weight of the evidence in State v. Thompkins (1997), 78 Ohio St.3d 380,387. stating
 "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief,' * * *
 "When a court of appeals reverses a judgement of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a" "thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. * * * ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")."
Although appellant attempted to show that his statement was given out of fear, the statement itself was presented into evidence. Also, the prosecuting attorney attacked appellant's credibility regarding his coerced confession. (Tr. 182-183). With regards to Antill's testimony, the prosecuting attorney also attacked his credibility regarding the claim that his statement was also coerced. (Tr. 72-73). Antill's statement was also placed into evidence. Appellee also had the testimony and statement of Leake, who confessed to being the other lookout for the burglary. Although appellant had evidence showing both Leake and Antill were not marked absent from school the day of the burglary, the attendance taking procedure was also attacked by the prosecuting attorney. (Tr. 155). Finally, appellee presented another witness, Meek. Although he was a convicted felon, he also testified that appellant told him that he committed the burglary. Based upon the evidence presented by appellee, the jury could not be said to have lost its way in finding appellant guilty. The arguments presented by appellant are of fact, and an appellate court cannot substitute its own judgement for that of the jury.State v. Walker (1978), 55 Ohio St.2d 208, 212. Therefore, it cannot be said that the jury's conviction was against the manifest weight of the evidence.
Given the evidence presented by appellee and the jury's findings regarding this evidence, appellant's fifth assignment of error is found to be without merit.
The judgement of the trial court is affirmed.
Donofrio, J., concurs in judgment only.
Vukovich, J., concurs.
APPROVED:
 ___________________________________ EDWARD A. COX, PRESIDING JUDGE