THE STATE OF OHIO, APPELLEE, *v.* BLAIR, APPELLANT.

(No. 50308—Decided July 7, 1986.)

*John T. Corrigan,* prosecuting attorney, and *Melody White,* for appellee.

*Robert M. Ingersoll,* for appellant.

DONOFRIO, J. Defendant Roy Blair appeals his conviction of one count of felonious assault with a gun specification. For the reasons adduced below, the trial court's judgment is affirmed.

I

The facts giving rise to this appeal are as follows.

On April 23, 1984, Roy Blair and Dwayne Ficklin got into a fight over money. When the fight broke up Blair allegedly got a shotgun and fired it at Ficklin as Ficklin was running into Cedric Braxton's home. Pellets allegedly hit Ficklin, but they neither broke his skin nor ripped the shirt he was wearing.

As a result of this incident, Roy Blair was indicted on one count of felonious assault in violation of R.C. 2903.11. with a firearm specification. (The grand jury indictment was filed July 24, 1984.) On February 12, 1985, a jury panel of twelve and one alternate was accepted and sworn, and the trial began.

At the trial Ficklin testified that on April 23, 1984, he and his friend Cedric Braxton had gotten into a fight with Roy Blair. Ficklin stated that after the fight broke up Blair went into his house and came out with a shotgun. Upon seeing the gun, Ficklin began to run towards the Braxton house. As he was running, Ficklin heard a blast and felt pellets hitting his left arm and leg.

Ficklin's testimony was corroborated by Cedric Braxton. Braxton testified that following the fight, the defendant went into his house, got a shotgun, came outside and fired it at Ficklin. Other eyewitnesses to the shooting include Laura Mae Braxton (Cedric's mother), Constance Curry and Kimberly Curry (neighbors). All testified that they saw Roy Blair shoot at Ficklin.

Patrolman Nick Barry of the Cleveland Police Department also testified on behalf of the state. Patrolman Barry arrived on the scene shortly after the incident. He testified that he found pellet marks in the door of the Braxtons' home and recovered a live sixteen-gauge shotgun shell, which Laura Mae Braxton said she had found outside her home.

Finally, the state called Otis Barbour to the stand. Barbour denied seeing anything that day. The prosecutor, over defense counsel's objection, was permitted to treat Barbour as a hostile witness and proceeded to cross-examine him. On cross-examination Barbour denied being afraid to testify, denied seeing Blair shoot the shotgun, and denied that Roy Blair asked him to testify on his behalf.

Roy Blair testified that he had been in a fight with Ficklin on the day in question but denied shooting at him. Rebecca Jackson, Blair's common-law wife, corroborated his testimony as did her friend Yvonne Carlyle.

At the close of the case the jury returned to deliberate its verdict. The trial court ordered the alternate juror to accompany the jury into the deliberation room but instructed him not to speak, just to listen. The jury was also instructed not to talk to the alternate juror.

On February 19, 1985, the jury found Roy Blair guilty of felonious assault with a firearm specification. The trial court then sentenced Blair to a term of three to fifteen years plus an additional three years of actual in-

carceration on the firearm specification.

On June 3, 1985, this court permitted the defendant to file a delayed appeal. The defendant raises two assignments of error.

## II

First assignment of error:

"The trial court denied Roy Blair his United States and Ohio constitutional right to a trial by an impartial jury free from outside influences when it permitted the alternate juror to sit in the jury room during the deliberation."

Crim. R. 23(B) provides that a jury shall consist of twelve in felony cases. The trial court may also permit as many as six alternate jurors to sit with the regular jurors during trial. Crim. R. 24(F). Alternate jurors are chosen in the same manner as the regular jurors, and replace regular jurors should one or more become unable or disqualified to perform their duties. *Id.* However, an alternate juror who does not replace a regular juror "shall be discharged after the jury retires to consider its verdict." Crim. R. 24(F). This final provision comports with the due process requirement that the jury be "free from outside influences." *Sheppard* v. *Maxwell* (1966), 384 U.S. 333, 362, 6 Ohio Misc. 231, 253, 35 O.O. 2d 431, 443. Since an alternate juror is not part of the deliberating body, he should not be permitted to be with the group, as he may have an influence on their determination.

It is clear from the record that the trial court violated the mandatory provision of Crim. R. 24(F) when it did not dismiss the alternate juror, and permitted said individual to sit in on the jury deliberations. The more difficult question is whether, under the facts of the instant case, this constitutes prejudicial error.

The appellant argues that the presence of an alternate juror is *per se* prejudicial and requires reversal. In support of this contention the appellant cites *United States* v. *Virginia Erection Corp.* (C.A. 4, 1964), 335 F. 2d 868; *United States* v. *Lamb* (C.A. 9, 1975), 529 F. 2d 1153; *United States* v. *Beasley* (C.A. 10, 1972), 464 F. 2d 468. In all three cases the court held that the presence of an alternate juror during jury deliberation requires *per se* reversal. The only case on point interpreting Ohio law, however, has held just the opposite. In *Potter* v. *Perini* (C.A. 6, 1976), 545 F. 2d 1048, the Sixth Circuit Court of Appeals held that the presence of an alternate juror for a short period of time was not prejudicial error. In reaching this conclusion the court noted that the alternate juror was not a stranger to the proceedings; that she was only present in the deliberation room for a short time; that the jury had to continue its deliberations after she left; that the defendant was convicted by a unanimous jury of twelve; and finally, that there was no evidence of prejudice in the record.

Under the facts of the instant case we are compelled to follow the *Potter* decision. In the case at bar, the alternate juror was in the deliberation room for only ninety minutes. The jury was then sent home for the weekend, and when the jury returned to deliberate, the alternate juror was dismissed. Further, the record reveals that the alternate juror was instructed not to speak, just to listen. Also, the defendant was convicted by an unanimous jury of twelve, and there is no evidence of prejudice in the record. Finally, the evidence of guilt was overwhelming. The state put on five eyewitnesses to the shooting all of whom told similar stories. The physical evidence found by Patrolman Barry further corroborated their testimony. Based on these facts, we must conclude that although the trial court erred in not complying with

Crim. R. 24(F), such error was not prejudicial.

The appellant's first assignment of error is overruled.

### III

Second assignment of error:

"The court denied Roy Blair a fair trial, as guaranteed him by the Due Process Clauses of the United States and Ohio Constitutions, when it permitted the state of Ohio to impeach its own witness through the use of prior inconsistent statements without first laying a proper foundation."

Evid. R. 607 provides as follows:

"The credibility of a witness may be attacked by any party except that *the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.* This exception does not apply to statements admitted pursuant to Rules 801(D)(1)(a), 801(D)(2), or 803." (Emphasis added.)

Surprise is adequately demonstrated if the testimony is materially inconsistent with the prior statement, and counsel did not have reason to believe the witness would change his testimony. *State* v. *Reed* (1981), 65 Ohio St. 2d 117, 19 O.O. 3d 311, 418 N.E. 2d 1359. The issue of surprise is a factual one. *Id.* The decision as to whether a party is taken by surprise is entrusted to the sound discretion of the trial court. *State* v. *Diehl* (1981), 67 Ohio St. 2d 389, 21 O.O. 3d 244, 423 N.E. 2d 1112. Affirmative damage occurs if the party's own witness testifies to facts that contradict, deny, or harm that party's trial position. *State* v. *Stearns* (1982), 7 Ohio App. 3d 11, 15, 7 OBR 12, 17, 454 N.E. 2d 139, 144.

A review of the record reveals that the prosecutor was neither surprised nor affirmatively damaged by the testimony of Otis Barbour. The prosecutor acknowledged at trial that prior to calling Barbour to testify, she knew he would deny having seen anything. Further, such testimony did not damage the state's case. Thus, we must conclude that the trial court erred in permitting such testimony.

Such a conclusion does not, however, necessitate a reversal. The evidence of guilt in the instant case was overwhelming. As noted earlier, five eyewitnesses testified that they saw the defendant shoot at Ficklin. In light of such evidence, we must conclude the error discussed above was harmless. Accordingly, the appellant's second assignment of error is overruled.

### IV

The trial court's judgment is affirmed.

*Judgment affirmed.*

ANN McMANAMON, P.J., and CORRIGAN, J., concur.

DONOFRIO, J., of the Seventh Appellate District, sitting by assignment in the Eighth Appellate District.