JOURNAL ENTRY and OPINION
Defendant-appellant, Michael Bruno, appeals from his conviction for murder (R.C. 2903.02) and the accompanying firearm specifications entered after a jury trial. Defendant argues that the common pleas court had no jurisdiction over the case as no journalized bindover entry from the juvenile court appears in the record and that the bindover entry filed in the juvenile court only bound the defendant over for murder and not aggravated murder; the trial court erred in permitting the State to present evidence of other bad acts unrelated to the murder of the victim; various limiting instructions were not given to the jury; the coroner was permitted to testify beyond her expertise; prejudicial photographs were admitted into evidence; irrelevant evidence concerning the victim's family was admitted; prosecutorial misconduct occurred during closing argument; the trial court erred in instructing the jury; the trial court erred in sentencing the defendant to solitary confinement on the anniversary of the murder; and that his counsel was ineffective for failing to request an instruction on accident. For the reasons set forth below, we affirm the defendant's conviction but modify the sentence.
The defendant was indicted on one count of aggravated murder (R.C.2903.01), with a one-year firearm specification (R.C. 2941.141) and a three-year firearm specification (R.C. 2941.145). Since the defendant was seventeen years old at the time of the incident, he was bound over from juvenile court to the court of common pleas.
The State presented evidence at trial that the defendant and the victim, Grant Schroder, had been feuding over a girl, Donna Rothman. Apparently, both defendant and the victim had been seeing the girl. On January 31, 1999, the feud had escalated to the point that the defendant's friend, Daniel Dunning, shot at the victim's friend, Emanuel Marcano, when the defendant, Dunning and Rothman all drove to the victim's house. The bullet ricocheted and hit Marcano in the shin.
On the evening of March 5, 1999, the defendant and several friends were gathered at Dunning's house for a small party. The party was broken up by Dunning's mother, who ordered the group out of the house when the defendant and his girlfriend, Christy Salim, got into a physical fight. When defendant left the party, he received a telephone call from Rothman on his cell phone and heard the victim in the background apparently taunt him to come over and fight. The defendant, thereafter, assembled several people from the party to accompany him to the victim's house to confront him.
When the group arrived at the victim's house, Chris Stansell, one of the defendant's friends, unscrewed the motion detector light bulb from the victim's outside light. Rothman then drove up with her friend, Jennifer Petrow. Rothman, thereafter, engaged in a fight with Salim, who had followed the defendant to the victim's house. Hearing the commotion outside, the victim and Emanuel Marcano came outside. At this time, the victim and Dunning began to square up for a fight. Several eyewitnesses testified that the defendant then reached around Dunning's shoulder and shot the victim point blank in the side of the face. The defendant's group then dispersed with several individuals going back to Dunning's house. The defendant called his father to pick him up and when he and Christy Salim were getting into the father's truck, the Lakewood police arrived and arrested the defendant and Salim.
The defendant presented evidence in his own defense. He testified that the victim had threatened to kill him on several occasions which prompted him to purchase a gun. He stated that on the night of March 5, 1999, he did not intend to shoot the victim when he went to his house, but took his gun because he was afraid the victim was going to shoot him. He stated that once he arrived at the victim's house, he felt like he was being surrounded by the victim and his friends and therefore fired a shot into the air to scare them. He stated that in order to fire his gun again, he had to jiggle it to get it to fire. While he was jiggling the gun, he looked up and was surprised to see someone so close to him and he fired the gun with the bullet hitting the victim in the face.
Based on the above evidence, the jury found the defendant guilty of the lesser included offense of murder as well as both firearm specifications. The defendant was sentenced to fifteen years to life plus three years on the gun specifications to run consecutively. The trial court further ordered that on the anniversary of the murder, March 6th of every year, the defendant was to be placed in solitary confinement.
The defendant timely appeals, asserting sixteen assignments of error. We will address the defendant's assignments of error in the order asserted and together where they address similar or related arguments.
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THERE WAS NO JOURNALIZED BINDOVER FROM THE JUVENILE COURT.
Defendant argues that there was no journalized entry of the juvenile court's bindover proceedings filed in the common pleas court. However, as the defendant apparently concedes in his reply brief, there was a journalized bindover entry filed with the juvenile court, which is a division of the court of common pleas. Defendant, however, goes on to argue that the journalized bindover entry only bound the defendant over for the offense of murder and that the trial court's subsequent indictment of defendant for aggravated murder exceeded the jurisdiction bestowed upon it by the juvenile court.
Juvenile courts have exclusive initial subject-matter jurisdiction over any case involving a person alleged to be delinquent for having committed, when younger than eighteen years of age, an act which would constitute a felony if committed by an adult. State v. Golphin (1998),81 Ohio St.3d 543, 544-545. Before such an individual may be tried as an adult in common pleas court, the juvenile court must comply with the bindover provisions in R.C. 2151.26. Id.
This court in State v. Fryerson (Feb. 10, 2000), Cuyahoga App. No. 71683, unreported, addressed the circumstance when the juvenile is bound over, yet indicted on different offenses that did not arise out of the basis of the transfer. In that case, the juvenile was indicted for offenses against a separate victim different from the offenses committed against another victim for which the juvenile was bound over. We held that as long as the indicted offense arose out of the offense that was the basis of the transfer, the juvenile could be indicted on a different offense, but where the juvenile was indicted on offenses that did not arise out of the bound over offenses, the trial court lacked jurisdiction.
In the instant case, we find that since the indictment of defendant for aggravated murder was derived from the charged act of murder which was the basis of the transfer, that the common pleas court did not exceed its jurisdiction. R.C. 2151.23(H) supports this conclusion. R.C. 2151.23(H) states in pertinent part:
 If a child who is charged with an act that would be an offense if committed by an adult was fourteen years of age or older and under eighteen years of age at the time of the alleged act and if the case is transferred for criminal prosecution pursuant to section 2151.26
of the Revised Code, the juvenile court does not have jurisdiction to hear or determine the case subsequent to the transfer.
 The court to which the case is transferred for criminal prosecution pursuant to that section has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court, including, but not limited to, * * * jurisdiction to accept a verdict and to enter a judgment of conviction pursuant to the rules of Criminal Procedure against the child for the commission of the offense that was the basis of the transfer of the case for the criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged. (emphasis added).
Therefore, the common pleas court has jurisdiction over a charge different from that bound over as long as the charge is derived from the charged act which is the basis of the transfer. In the instant case, the aggravated murder charge was clearly derived from the charged act of murder which was the basis of the transfer.
The defendant's first assignment of error is without merit and is overruled.
 II. DEFENDANT WAS DENIED A FAIR TRIAL WHEN EXTENSIVE EVIDENCE CONCERNING OTHER BAD ACTS WAS OFFERED AND NO LIMITING INSTRUCTION WAS GIVEN TO THE JURY.
 III. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT PERMITTED EVIDENCE OF BAD ACTS FOR WHICH NO NOTICE WAS GIVEN TO DEFENDANT.
 V. DEFENDANT WAS DENIED A FAIR TRIAL WHEN EVIDENCE OF GANG RELATED ACTIVITIES WAS PRESENTED.
Defendant argues that the trial court erred in permitting other bad act evidence to be admitted in violation of Evid.R. 404(B). Defendant is referring to the altercation that ensued several weeks prior to the murder on January 31, 1999 where the defendant threatened to kill the victim; the testimony regarding the fact defendant was seen with a handgun on prior occasions; evidence regarding the fight between defendant and his pregnant girlfriend; the fact defendant rolled a joint and marijuana was found on his person when arrested; the fact that defendant was on house arrest the date of the January 31, 1999 altercation; and the evidence regarding the defendant's association with a gang called the Spades. Defendant also argues that the trial court erred in failing to give a limiting instruction regarding this evidence.
We note that defendant failed to object to this evidence and therefore, for purposes of appeal, waived any error. We nonetheless find that such evidence was not prejudicial to defendant.
Evid.R. 404(B) reads as follows:
(B) Other crimes, wrongs or acts.
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59 states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part or the appellant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
In the instant case, the fact that defendant threatened to kill the victim several weeks prior to the murder showed motive or intent and also absence of accident. All of these are exceptions to the inadmissibility of other bad act evidence.
Likewise, evidence of the fact that defendant was seen on several prior occasions with a .22 handgun also did not violate Evid.R. 404(B). This court has held that the introduction of evidence that a defendant has a propensity to carry and display firearms, may be used to establish proof of motive, intent, preparation, plan, knowledge and identity as permitted by Evid.R. 404(B). State v. Small (Nov. 2, 1995), Cuyahoga App. No. 68167, unreported; State v. Shabazz (Sept. 2, 1993), Cuyahoga App. No. 63725, unreported. In the instant case, the testimony regarding the defendant's possession of a gun on prior occasions was not used to establish evidence of a prior character trait. The evidence demonstrated the defendant's motive, intent, preparation, plan, knowledge and identity, which was all relevant given the fact that the handgun used to murder the victim was never found.
Testimony regarding the fact that the defendant had gotten into a fight with his girlfriend at Dunning's party was relevant to explain why the party initially broke up when Dunning's mother ordered everyone to leave. When the defendant left the party, he apparently received the phone call which prompted him and the others to proceed to the victim's house to confront him.
The record indicates that defense counsel opened the door regarding the fact that the defendant had rolled a joint and that marijuana was found on his person. Several times counsel asked if people were smoking marijuana at the party and when one of the officers testified that a joint was found in Dunning's bedroom, defense counsel asked the officer whether the joint was defendant's. In any case, even if this evidence should not have been admitted, the defendant was not convicted solely because he had marijuana on his person or rolled a joint. There was overwhelming eyewitness testimony of his guilt.
We find that the reference to the defendant's membership in the Spades gang to have been irrelevant as there was no evidence that this was a gang-related murder which would relate to motive, intent or plan. However, even if error, the gang affiliation statements were not prejudicial to defendant, because several witnesses testified to seeing the defendant shoot the victim. See, State v. Sealey (Dec. 12, 2000), Franklin App. No. 99AP-1405, 00AP-1079, unreported (since two eyewitnesses testified to defendant's shooting the victim, the evidence of defendant's gang affiliation was harmless.)
As to the trial court's failure to give a limiting instruction regarding the above evidence, the record indicates that defendant never requested such instructions. Defendant's failure to request such an instruction at trial waived any error in the trial court's failure to give such instructions. State v. Grant (1993) 67 Ohio St.3d 465,472.
The failure to request the instructions did not constitute plain error because the absence of such instructions did not affect the jury's verdict and nothing suggests the jury used this evidence to convict the defendant on the theory he was a bad person. Id. at 472. The court in State v. Lytle (1976), 48 Ohio St.2d 391, held that error in the admission of other act testimony is harmless when there is no reasonable probability that the testimony contributed to the accused's conviction. As we stated above, there was overwhelming eyewitness testimony of defendant's guilt.
Defendant's first, third and fifth assignments of error are overruled.
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED THE PROSECUTOR TO QUESTION DANIEL DUNNING CONCERNING HIS STATEMENTS AND GAVE NO LIMITING INSTRUCTION TO THE JURY.
Defendant argues the trial court erred in permitting the State to impeach its own witness, Daniel Dunning. When Daniel Dunning took the stand at trial, his testimony conflicted with the statement he gave to police. At trial, he alleged that the victim had threatened to shoot the defendant on many occasions and also denied key statements that he made to the police, such as the defendant said he was going to put a cap in [Schroder's] ass the night of the murder.
Evid.R. 607 provides:
 (A) Who may impeach. The credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803.
Under Evid.R. 607, a party may not impeach its own witness with a prior inconsistent statement without showing surprise and affirmative damage. State v. Keenan (1993), 66 Ohio St.3d 402. In State v. Reed (1981),65 Ohio St.2d 117, 125, the Supreme Court stated that surprise is demonstrated when the testimony is not in accord with the prior statement and counsel did not have reason to believe the witness would repudiate the prior statement when testifying.
Surprise under Evid.R. 607 is adequately demonstrated if the testimony is materially inconsistent with the prior statement and counsel did not have reason to believe the witness would change his testimony. State v. Blair (1987), 34 Ohio App.3d 6. Under Evid.R. 607, the issue of surprise is a factual one, and the decision as to whether a party is taken by surprise is entrusted to the sound discretion of the trial court. State v. Blair, supra.
Affirmative damage, under Evid.R. 607, is established when the witness testifies to facts which contradict, deny or harm the party's trial position. State v. Blair, supra.
In the instant case, the prosecutor informed the court that he was surprised by Dunning's testimony because it differed from his statement to the police. The trial court permitted the prosecutor to question Dunning as if on cross-examination. We find that the prosecutor adequately argued that he was surprised by such testimony which also affirmatively damaged the State's position that it was the defendant who was making the threats to kill Schroder. We, therefore, will not disturb the trial court's discretion in this area. Although the prosecutor also went on to refresh Dunning's recollection on several other conflicting statements, we find the trial court adequately restrained the questioning.
As for the trial court's failure to give a limiting instruction, again, the record reflects that no such instruction was requested and that any error is, therefore, waived. State v. Grant, supra.
Defendant's fourth assignment of error is overruled.
 VI. DEFENDANT WAS DENIED A FAIR TRIAL WHEN EVIDENCE OF THE PLEA OF THE CO-DEFENDANT WAS ALLOWED AND THERE WAS NO LIMITING INSTRUCTIONS.
In the instant case, the State presented the testimony of Dunning, who was the defendant's co-defendant. The jury was informed Dunning pled to involuntary manslaughter in exchange for his testimony. The defendant made no objection to this evidence. Therefore, any error regarding the evidence of the plea was waived. Regarding the failure to give a limiting instruction, none was requested, and therefore any error is waived. State v. Grant, supra.
Defendant's sixth assignment of error is overruled.
 VII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED THE CORONER TO TESTIFY AS TO THE GUNSHOT RESIDUE DISTANCE.
The coroner in this case was Dr. Miron who, at the time of trial, had worked for the county coroner's office for six years and is an experienced forensic pathologist. She testified that due to the stippling effect on the defendant's cheek, she estimated that the gun was fired anywhere from six inches to two feet away because evidence of stippling is a textbook indicator of such distance. Given the coroner's experience, she possessed the requisite experience and knowledge to testify to such evidence. However, even if she was not a qualified expert on the subject, the defendant was not harmed by such testimony, because several eyewitnesses to the murder testified that the gun was only about a foot away from Schroder's face when fired.
The defendant's seventh assignment of error is overruled.
 VIII. DEFENDANT WAS DENIED A FAIR TRIAL WHEN GRUESOME HORRIFIC PHOTOGRAPHS WERE RECEIVED INTO EVIDENCE.
Defendant contends that the admission of the autopsy photographs of the victim was unnecessary given the extensive testimony of the coroner regarding the cause of death. He argues the gruesome nature of the photographs prevented him from having a fair trial.
Pursuant to Evid. R. 403 and 611(A), the admission of photographic evidence is left to the discretion of the trial court. State v. Mauer (1984), 15 Ohio St.3d 239, 264; State v. Phillips (1995), 74 Ohio St.3d 72,77. Accordingly, the trial court has broad discretion in the admission of photographic evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, the reviewing court should be slow to interfere. Maurer, supra at 265.
In the present case, defendant objects to the introduction of the autopsy photographs due to the gruesome nature of the photographs. Properly authenticated photographs, even if gruesome, are admissible if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number. State v. Frazier (1995),73 Ohio St.3d 323, 333.
The photographs in the instant case were not repetitive or cumulative. These autopsy photographs were introduced to corroborate the coroner's testimony and in particular, the close range at which the gun was fired. We find the probative value of the photographs substantially outweighs the danger of unfair prejudice to the defendant. Accordingly, defendant's eighth assignment of error is overruled.
 IX. DEFENDANT WAS DENIED A FAIR TRIAL WHEN EVIDENCE CONCERNING THE FAMILY OF THE DECEDENT WAS PRESENTED TO THE JURY.
Defendant argues that the trial court erred in permitting testimony that the victim's mother was a nurse and his father a firefighter and that the prosecutor improperly commented that the victim was an organ donor. Defendant argues that such evidence was irrelevant and was elicited to appeal to the emotion of the jury.
We note that the defendant failed to object to this evidence and commentary by the prosecutor, and therefore waived any error. Nonetheless, any error in permitting such evidence was harmless. An error is harmless and not grounds for reversal where there is no reasonable probability that unlawful testimony contributed to the accused's conviction. State v. Lytle (1976), 48 Ohio St.2d 391, paragraph three of syllabus; State v. Brown (1992), 65 Ohio St.3d 483 . We find there is no reasonable probability that this testimony and commentary by the prosecutor with regard to the victim's family's employment and the fact his organs were donated contributed to the defendant's conviction, and hence is harmless error. See, also, State v. King (Feb. 23, 1993), Cuyahoga App. No. 61040, unreported (mother's testimony regarding son's employment and children left behind was not prejudicial although irrelevant.)
The defendant's ninth assignment of error is overruled.
 X. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER ARGUMENT BY THE PROSECUTOR.
Defendant argues that the prosecutor committed misconduct in closing argument by commenting on the truthfulness of Dunning's testimony and by commenting on the fact that the victim's organs were donated.
Regarding the prosecutor's commenting on Dunning's truthfulness, the trial court sustained all objections to these references. The jury is presumed to follow the curative instructions of the trial court. State v. Loza (1994), 71 Ohio St.3d 61, 75. Defendant has failed to show that the jury did otherwise.
Regarding the commentary on the donation of Schroder's organs, we find that although this was irrelevant, it was not prejudicial. The test regarding prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14. Given the overwhelming evidence of defendant's guilt, such comments, although improper, were not prejudicial.
Defendant's tenth assignment of error is overruled.
 XI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS ALLOWED TO BE CONVICTED OF MERE NEGLIGENCE.
 XII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE AN UNCONSTITUTIONAL INSTRUCTION CONCERNING PRESUMPTION.
 XIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE IMPROPER JURY INSTRUCTIONS CONCERNING VOLUNTARY MANSLAUGHTER.
 XIV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE JURY WAS INSTRUCTED TO CONSIDER THE TESTIMONY OF DEFENDANT DIFFERENT FROM OTHER WITNESSES.
The above assignments of error will all be addressed together since they all relate to alleged errors committed by the trial court in instructing the jury.
In reviewing these assignments of error, we note that no objections to the instructions were made to the trial court. Failure to object to a jury instruction constitutes a waiver and any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Underwood(1983), 3 Ohio St.3d 12, syllabus. In State v. Williford (1990), 49 Ohio St.3d 247, 251, the Supreme Court found that we have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver. Crim.R. 30(A) states in pertinent part:
 On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider the verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
We find that the defendant has failed to show he was prejudiced by the trial court's instruction. In examining the trial court's jury instructions, we do not review portions of those instructions in isolation, rather we review the charge as a whole in determining whether the jury was properly instructed. State v. Burchfield (1993),66 Ohio St.3d 261, 262. In so doing, we find the jury was correctly instructed.
Defendant's eleventh, twelfth, thirteenth and fourteenth assignment of errors are overruled.
 XV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ORDERED DEFENDANT TO BE PLACED IN SOLITARY CONFINEMENT ON EACH MARCH 6TH.
The defendant argues that the trial court denied him due process by ordering him confined to solitary confinement on the anniversary of the murder. The State concedes that the trial court erred and we agree. A trial court may only impose a sentence as provided for by law. State v. Eberling (Apr. 9, 1992), Cuyahoga App. No. 58559, unreported. The punishment allowed by law in the case of a conviction for murder does not provide for any period of solitary confinement, therefore, the solitary confinement sentence was contrary to law. State v. Snitzky (Nov. 25, 1998), Cuyahoga App. No. 74706, 74811, unreported.
The defendant's fifteenth assignment of error is well taken, and the part of the sentence ordering the defendant to solitary confinement on the anniversary of the murder is vacated.
 XVI. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Defendant argues that counsel was ineffective for failing to request an instruction on accident.
This court described the standard of review to make a showing of ineffective assistance of counsel in Lakewood v. Town (1995),106 Ohio App.3d 521, 525-526:
 The standard of review for ineffective assistance of counsel requires a two part test and is set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 The defendant must show that counsel's representation fell below an objective standard of reasonableness. Strickland at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Furthermore, when determining whether counsel's performance was deficient, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland v. Washington, supra at 689.
Given the evidence presented, we find that an instruction request on accident would have been futile and it was sound trial strategy not to request such an instruction.
Defendant's sixteenth assignment of error is overruled.
Conviction affirmed. That portion of the sentence ordering the defendant to solitary confinement on the anniversary date is vacated, and the sentence as modified is affirmed.
It is ordered that appellee and appellant share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for modification of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J. and ANNE L. KILBANE, P.J., CONCUR