OPINION
Appellant Michael Lee Walker appeals his conviction for domestic violence in the Court of Common Pleas, Stark County. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
On February 16, 2000, appellant and his live-in girlfriend, Karen Kerr, got into an argument regarding financial matters. At the time, appellant and Kerr lived in a Shorb Avenue N.W. residence with Kerr's daughter Brandy, as well as two other persons, Judy Funkhouser and Arthur "Chuck" Thomas. The argument between appellant and Kerr developed into a physical altercation, during which appellant struck Kerr in the face. Both Funkhouser and Thomas heard noises related to the argument from their location in the living room of the house. Soon thereafter, Thomas was proceeding out of the bathroom when he observed Kerr come out of her bedroom with blood near her mouth. Appellant at that time told Kerr to come back to the bedroom. Thomas then observed appellant punch Kerr in the left side of her face. Appellant returned to the bedroom, while Kerr proceeded to sit with Funkhouser and Thomas in the living room. Funkhouser encouraged Kerr to call the police, which she did, using a telephone provided by Thomas.
Several minutes later, Canton Police Officer Kevin Sedares appeared at the residence in response to the call. Sedares observed that Kerr had an injured lip and was crying to the extent that he had difficulty understanding her. After completing his investigation, including taking photographs at the scene, Sedares initiated the paperwork for a domestic violence charge, which included Kerr signing a form acknowledging that she was a victim of domestic violence and wanted appellant arrested.
Appellant was indicted on one count of domestic violence, R.C.2919.25(A), elevated to a fifth-degree felony based on a prior conviction for domestic violence in 1995. The matter proceed to trial on March 28, 2000. Several days before the trial date, appellant filed a motion to exclude a 911 tape containing Kerr's call to the police on February 16, 2000. However, the state was permitted at trial to play the 911 tape over appellant's objection. The prosecutor called Kerr as a witness during its case in chief; however, in Kerr's recitation of events at trial she portrayed herself more as the instigator of the altercation, stating that she had kicked and scratched appellant in the back and had bitten his finger prior to his aggressive actions. Thus, the prosecutor essentially found it necessary to impeach Kerr on the stand.
On March 20, 2000, the jury returned a verdict of guilty. Thereafter, on April 5, 2000, the trial court sentenced appellant to a term of twelve months imprisonment. Appellant filed his notice of appeal on May 3, 2000, and herein raises the following three Assignments of Error:
 I. THE TRIAL COURT ERRED BY ALLOWING SUBMISSION TO THE JURY OF A 911 TAPE.
 II. THE COURT ERRED IN PERMITTING THE STATE TO IMPEACH ITS OWN WITNESS, KAREN KERR, WITH PRIOR INCONSISTENT STATEMENTS, ABSENT EVIDENCE OF SURPRISE AND AFFIRMATIVE DAMAGE, IN VIOLATION OF RULE 607 OF THE OHIO RULES OF EVIDENCE, AND PERMITTING THE STATE TO IMPEACH ITS OWN WITNESS, KAREN KERR WITH EXTRINSIC HEARSAY EVIDENCE, CONTRARY TO OHIO LAW.
 III. APPELLANT'S CONVICTION ON ONE COUNT DOMESTIC VIOLENCE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE BECAUSE THE AFFIRMATIVE DEFENSE OF SELF DEFENSE WAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE[.]
 I.
In his First Assignment of Error, appellant challenges the introduction of the victim's taped 911 call as inadmissible hearsay. The state argues in turn that the "excited utterance" exception, per Evid.R. 803(2), applies to these facts.
Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The admission or exclusion of evidence rests in the sound discretion of the trial court.State v. Sage (1987), 31 Ohio St.3d 173, 180. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing the disputed evidence. See State v. Oman
(Feb. 14, 2000), Stark App. No. 1999CA00027, unreported. The Ohio Supreme Court in State v. Duncan (1978), 53 Ohio St.2d 215, reiterated its precedent that " * * * an appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." Id. at 219.
Although appellant stipulated as to the authenticity of the 911 tape (T. at 6), he objected to its admission at trial on hearsay grounds, and maintains herein that Kerr sounds calm during the recorded telephone call, which Kerr recalled placing at about thirty minutes after the confrontation (T. at 128).[1] "To be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern `some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made `before there had been time for such nervous excitement to lose a domination over his reflective faculties. * * * ' " State v. Huertas
(1990), 51 Ohio St.3d 22, 31, quoting Potter v. Baker (1955),162 Ohio St. 488, paragraph two of the syllabus. Certainly, " * * * as the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance." Duncan, supra, at 219, quoting McCormick On Evidence (2 Ed. 1972) 706, Section 297. However, in State v. Taylor (1993), 66 Ohio St.3d 295, 303, the Ohio Supreme Court noted that "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought."
Our research has revealed at least two cases where the "excited utterance" exception was affirmed even though the disputed declarant's statements were made approximately thirty minutes after the underlying criminal event. See Huertas, supra; State v. Johnson, (April 26, 1996), Montgomery App. No. 15253, unreported. Furthermore, in contravention of appellant's overall assessment of Kerr's composure, both Funkhouser and Officer Sedares observed Kerr as visibly upset and crying following the incident, to the point that Sedares recalled having difficulty understanding her words. T. at 171. As we have frequently noted, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230.
Based on our review of the record and the 911 tape, we find the trial court could have determined that Kerr was still under the stress of the encounter, and that the court did not abuse its discretion in permitting the contested evidence to be heard by the jury. Appellant's First Assignment of Error is overruled.
 II.
In his Second Assignment of Error, appellant challenges the methods utilized to impeach the testimony of the victim, Karen Kerr, who took the stand after being called by the state.
Impeachment of witnesses is addressed in Evid.R. 607(A), which reads as follows:
 The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803.
Appellant first asserts that the trial court improperly allowed the state to use prior inconsistent statements against Kerr, without the aforecited required showing of surprise and affirmative damage. Appellant secondly disputes the trial court's allowance of extrinsic evidence in the form of testimony concerning the police reports, the submission of medical records, and the aforementioned 911 tape, for the purposes of impeachment. The state concedes in its brief that it did not meet the prerequisites of Evid.R. 607(A), and it does not presently claim that it attempted at trial to treat Kerr as a hostile witness, which would have at least permitted interrogation via leading questions under Evid.R. 611(C). See, e.g., State v. Dolce (1993) 92 Ohio App.3d 687.
A failure to establish surprise or affirmative damage under Evid.R. 607(A) does not, however, necessitate a reversal. See State v. Blair
(1986) 34 Ohio App.3d 6, 9. Thus, the state urges that any errors in this regard should be considered harmless. In order to hold an error harmless, a court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967),386 U.S. 18. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, 290. The task of the appellate court is to review the record and decide the probable impact of the error on the minds of the average jury. Harrington v. California
(1974), 395 U.S. 250, 254.
The record reveals that the state called as witnesses Funkhouser, Thomas and Officer Sedares. Funkhouser first heard an argument taking place in the bedroom, then observed the argument progress to an altercation near the front door of the house. At that point, she watched as appellant "smacked [Kerr] in the side of the face." T. at 147. Funkhouser stated that she did not see Kerr bite appellant to precipitate the slap. Thomas, who also did not observe any biting, described Kerr leaving the bedroom with blood on her mouth, followed by appellant "cornering" Kerr and punching her in the side of the face. He was positioned a mere six to eight feet down the hallway at the time. T. at 163. Finally, Officer Sedares testified to his arrival at the house, being greeted at the door by Funkhouser and Kerr, who displayed an injured lip. According to Sedares, appellant continued asking, during his transport to the police station, why he was being arrested. Sedares replied, "You beat the shit out of your girlfriend." T. at 176. Appellant responded that he had "just slapped her around a little bit."Id. Sedares noticed that appellant appeared nonchalant during this time, and that appellant did not complain of any pain or injuries. Appellant wore only a pair of basketball shorts, and Sedares did not notice any marks or bruises on him.
Based on the foregoing, and a review of the record, we find that appellant was not entitled to a new trial due to the overwhelming evidence presented of his guilt. Blair, supra. Therefore, appellant's Second Assignment of Error is overruled.
 III.
In his Third Assignment of Error, appellant argues that his conviction is against the manifest weight and sufficiency of the evidence presented at trial. We disagree.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine, "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259.
Appellant focuses on the issue of self-defense. To prevail on a non-deadly-force affirmative defense, a defendant must show by a preponderance of the evidence that (1) he was not at fault in creating the situation; (2) he reasonably believed that some force was necessary to defend himself against the imminent use of unlawful force, and (3) the force used was not likely to cause death or great bodily harm. In Re:Maupin (Dec. 11, 1998), Hamilton App. No. C-980094, unreported; Columbusv. Dawson (1986), 33 Ohio App.3d 141, 142; R.C. 2901.05(A).
There is no dispute that the trial judge gave valid instructions to the jury regarding self-defense. Nonetheless, prior to closing arguments, he made the following assessment to counsel outside the hearing of the jury:
 And I'll be very honest with you; I've not heard any evidence of self-defense here presented to the Court from anybody, even from the victim.
 He (sic) simply said when he put her finger in his face, she bit it. That doesn't equate to me of self-defense that gives him the right to slap her not once, but twice, once before this happened.
 With that in mind, you tell me what evidence there is of self-defense.
T. at 191-192
Appellant presented no evidence or testimony at trial, other than via cross-examination. Upon review of the record, and per our recitations in appellant's Second Assignment of Error, we are unable to find that the jury lost its way in weighing the testimony and declining to accept appellant's implicit proposition that he reasonably believed that the described level of force was necessary to defend himself. Appellant's Third Assignment of Error is overruled.
For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Gwin, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
CASE NO. 2000CA00128.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
[1] The time period prior to the call was in some dispute. We note Judy Funkhouser's recollection that it was "five minutes maybe," and definitely less than thirty minutes. T. at 160.