The STATE of Ohio, Appellee,

v.

MILEY, Appellant.

[Cite as *State v. Miley* (1991), 77 Ohio App.3d 786.]

Court of Appeals of Ohio,
Butler County.

No. CA90–12–232.

Decided Oct. 21, 1991.

*John F. Holcomb*, Butler County Prosecuting Attorney, and *Robert N. Piper III*, Assistant Prosecuting Attorney, for appellee.

*Mary K. Dudley*, for appellant.

WILLIAM W. YOUNG, Judge.

This appeal is from the conviction of defendant-appellant, James R. Miley, for voluntary manslaughter, in violation of R.C. 2903.03(A).

The record shows that on June 22, 1990, appellant was arrested in Hamilton, Ohio, and charged with the murder of David Jesse Frederick. Appellant was also charged with assaulting Frederick's wife, Tonya. The trial commenced November 13, 1990. Twelve jurors and two alternates were initially impanelled. On November 14, 1990, prior to deliberations, the trial court replaced one juror who was feeling ill. Also, the trial court brought to the attention of the parties that another juror had planned a trip beginning on November 15, 1990. Thus, after instructions were given to the jury,[1] the trial court indicated to the jury that if they were not able to conclude their deliberations by the end of the day, the remaining alternate would replace the juror who was leaving on a trip the next day. The remaining alternate was permitted to sit in on the jury deliberations and was instructed to listen to the deliberations, but not to participate in any of the jury's discussions.

The jury deliberated the evening of November 14, 1990, but could not reach a final verdict. After being informed that the jury had reached a verdict on part of the case during the deliberations on November 14, the trial court requested the twelve regular jurors to sign a verdict form for any verdict that they had reached during their deliberations. The trial judge also suggested to the alternate juror that if she had concurred in that verdict, she should also sign the verdict form. The trial court then excused the regular juror and replaced her with the alternate juror.

The eleven regular jurors and the alternate juror returned on November 15, 1990, and resumed deliberations. After concluding their deliberations, the

---

1. The court instructed the jury on murder, voluntary manslaughter, and involuntary manslaughter as to the death of David Jesse Frederick. With respect to the alleged assault of Tonya Frederick, the court instructed the jury on aggravated assault and felonious assault. The court also gave instructions on self-defense.

jury found appellant not guilty on the charges of murder, felonious assault, and aggravated assault. Those three verdicts were signed by the original twelve jurors, as well as the alternate juror. The jury, consisting of the alternate juror and the eleven original jurors, found appellant guilty of voluntary manslaughter.

On December 14, 1990, the trial court sentenced appellant to a ten- to twenty-five-year prison term as to the voluntary manslaughter conviction. Appellant filed this timely appeal.

In his sole assignment of error, appellant contends that he was denied his right to a trial by jury in violation of the United States and Ohio Constitutions, because the trial court erred in replacing a regular juror with an alternate juror after deliberations had begun.

Crim.R. 23(B) provides that, in felony cases, a jury shall consist of twelve jurors. The trial court may also permit as many as six alternate jurors to be impanelled and to sit with the regular jurors during trial. Crim.R. 24(F). Alternate jurors are selected in the same way as regular jurors and hear the same evidence. *Id.* Alternate jurors shall replace jury members " * * * who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." *Id.* An alternate juror who does not replace a regular juror " * * * shall be discharged after the jury retires to consider its verdict." *Id.*

In the instant action, the record clearly reveals that the trial court violated the express mandate of Crim.R. 24(F) when it failed to discharge the alternate juror at the time the jury retired for deliberations. However, appellant's counsel unequivocally expressed satisfaction with the trial court's jury procedure. There is even some indication that the erroneous jury procedure was employed at the behest of appellant's counsel. Just before the jury was excused to commence deliberations, the trial judge informed the parties that one of the regular jurors may have to be excused before deliberations ended and a verdict was reached. The trial judge decided not to discharge the alternate in the event that the regular juror had to be excused. Appellant's counsel did not object to the court's decision. It was also decided that the alternate juror would sit in with the jury during its deliberations, but that she was not to speak or take part in the jury's discussions. Again, appellant's counsel did not object.

After the first day of deliberations, the court was asked by one of the jurors to be excused because she had planned to begin a vacation trip the next day. After a discussion involving the parties, appellant's counsel reminded the court that the alternate was still available. Thus, the regular juror was excused and the alternate took her place on the twelve-member panel the

following day. Both parties gave their consent to the jury procedure. It was explained to the alternate and the regular eleven jurors that the alternate was now to actively participate in the deliberations.

■ The court also asked both parties whether they objected to the regular twelve jurors signing verdict forms for any verdicts that they had already reached. The trial court suggested that if the alternate concurred in the verdicts, she could also sign the verdict forms. Neither party objected. Appellant's counsel made it clear to the court that he preferred it that way. The following day all verdicts were returned, and the jury were dismissed. Since appellant failed to object to the jury procedure, we find that any errors that may have been committed by the trial court were waived by appellant.

■ It is well established in Ohio that " * * * [a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. Moreover, the fact that appellant raises a constitutional question does not change this court's conclusion. A state or federal constitutional question cannot be initially raised in the court of appeals when it has not been previously raised at the trial court level. *State ex rel. Specht v. Oregon City Bd. of Edn.* (1981), 66 Ohio St.2d 178, 20 O.O.3d 191, 420 N.E.2d 1004; *State v. Schell* (1984), 13 Ohio App.3d 313, 13 OBR 390, 469 N.E.2d 999. As discussed above, the facts in the record clearly disclose that appellant had the opportunity to object to the substitution and presence of an alternate juror during deliberations but failed to do so.

Appellant concedes that he failed to object to the jury procedure. Nevertheless, he now argues that it was plain error to allow an alternate juror to accompany the jury during its deliberations, and to be later substituted, despite the consent of his counsel. Appellant contends that since the presence of an alternate during deliberations amounts to plain error, he should be awarded a new trial. The plain error exception to the waiver rule is found in Crim.R. 52(B), and provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The Ohio Supreme Court has concluded that in order to constitute a plain error or defect under Crim.R. 52(B), a substantial right must have been affected and, but for the error, the outcome of the trial would have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. The plain error doctrine " * * * is to be taken with the utmost caution,

under exceptional circumstances and only to prevent the manifest miscarriage of justice." *Id.* at 97, 7 O.O.3d at 181, 372 N.E.2d at 808.

To support his argument that the plain error doctrine requires a reversal of the instant action, appellant offers cases from an Ohio appellate court and three circuit courts which adhere to this *per se* plain error rule. *State v. Locklear* (1978), 61 Ohio App.2d 231, 15 O.O.3d 369, 401 N.E.2d 457 (a juror may not be substituted for a regular juror after the jury have retired to consider their verdict); *United States v. Lamb* (C.A.9, 1975), 529 F.2d 1153 (Fed.R.Crim.P. 24[c] requirement that an alternate juror shall be discharged after the jury retire is a mandatory requirement. It should be followed because any benefit deriving from deviating from the rule is unclear and the possibility of prejudice so great.); *United States v. Beasley* (C.A.10, 1972), 464 F.2d 468; *United States v. Virginia Erection Corp.* (C.A.4, 1964), 335 F.2d 868.

█ Other Ohio and federal courts, however, have shunned the *per se* rule by requiring a reversal only where there is some showing of prejudice. See, *e.g., LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 512 N.E.2d 640 (trial court's failure to discharge alternate juror after the jury retired to consider their verdict, in a fraud action, and its substitution of an alternate juror for an incapacitated juror after deliberations had begun, was not reversible error where counsel knew of substitution but raised no objection thereto); *State v. Blair* (1986), 34 Ohio App.3d 6, 516 N.E.2d 240 (failure of trial court to discharge alternate juror after jury retired to consider their verdict is not *per se* cause for reversal); *United States v. Reed* (C.A.2, 1986), 790 F.2d 208 (a violation of Fed.R.Crim.P. 24[c], which is essentially equivalent to Ohio Crim.R. 24[F], does not require reversal *per se* absent a showing of prejudice); *United States v. Hillard* (C.A.2, 1983), 701 F.2d 1052, certiorari denied (1983), 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1310 (there is no constitutional impediment to a substitution of an alternate for a regular juror after commencement of deliberations). We consider this to be the better rule.

The Ohio Rules of Criminal Procedure must be applied flexibly "to provide for the just determination" of every case and must be construed to secure simplicity in procedure, fairness in procedure, and the elimination of unjustifiable expense and delay. Crim.R. 1(B); see *Fallen v. United States* (1964), 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (Federal Rules of Criminal Procedure are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances). In attempting to provide for a just determination of a criminal proceeding, the latter cases appear to adopt a flexible construction of the Criminal Rules. Hence, we are not in agreement with the courts advancing the rigid *per se* plain error rule.

Even if the alleged erroneous jury procedures did not require a *per se* reversal, appellant nevertheless submits that he was materially prejudiced. Appellant contends that the substitution of a juror, after a partial verdict had already been returned, was clearly capable of producing an unjust result. The question of whether a substitution of an alternate juror, after a partial verdict has been returned, is prejudicial has not been directly ruled upon by an Ohio court. We will therefore consider it at some length.

Several courts have ruled that when an alternate juror is substituted for a regular juror, the jury must be instructed in clear and unequivocal terms that they are to begin deliberations anew. *United States v. Kopituk* (C.A.11, 1982), 690 F.2d 1289, certiorari denied (1983), 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391; *United States v. Phillips* (C.A.5, 1981), 664 F.2d 971, certiorari denied (1982), 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354; *People v. Collins* (1976), 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742, certiorari denied (1977), 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796. The premise for requiring the trial court to instruct the jury to begin deliberations anew is grounded in the belief that the fundamental right of a fair and impartial deliberation is to be protected. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. In supporting this view, the New Jersey Supreme Court held that:

" 'The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11.' " *State v. Corsaro* (1987), 107 N.J. 339, 349, 526 A.2d 1046, 1052 (quoting *Collins, supra,* 17 Cal.3d at 693, 131 Cal.Rptr. at 786, 552 P.2d at 746). Thus, it appears that those courts which demand that a jury be instructed to begin its deliberations anew are of the opinion that a defendant may not be convicted, except by twelve jurors who have heard all of the evidence and arguments and who together have deliberated to unanimity.

In the instant action, the trial court failed to provide the jury with supplementary instructions to begin anew when the alternate replaced the regular juror. In addition, the trial court required the jury to sign verdict forms for any verdicts that they had reached prior to the alternate's replacing the regular juror. Appellant asserts that the trial judge's actions were prejudicial because he was denied the right to a fair and impartial deliberation. Moreover, he argues that the outcome of the trial would have been different if the regular juror had not been substituted. Having reviewed the case law and the record, we find that appellant did in fact demonstrate that a manifest

miscarriage of justice resulted from the trial court's decision not to begin deliberations anew.

In determining whether a juror substitution procedure is constitutional, the Seventh Circuit in *Henderson v. Lane* (C.A.7, 1980), 613 F.2d 175, certiorari denied (1980), 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844, stated that a court must consider whether the procedure preserves the "essential feature" of the jury. The "essential feature" of the jury is defined by the United States Supreme Court as " * * * the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Williams v. Florida* (1970), 399 U.S. 78, 101, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446, 460. We are of the opinion that the "essential feature" of the jury was not preserved in the instant action.

First, the trial judge, after substituting the alternate juror, simply told the new panel to continue their deliberations and did not specifically instruct them to begin entirely anew. Thus, appellant was denied the right to a trial where an alternate juror " * * * fully participates in all the deliberations which lead to a verdict." *Collins, supra,* 17 Cal.3d at 693, 131 Cal.Rptr. at 786, 552 P.2d at 746. Moreover, we can find nothing in the record to indicate that the trial judge inquired whether the alternate juror had the ability to consider the evidence and deliberate fairly and fully. See *Hillard, supra,* 701 F.2d at 1057. Such an inquiry was necessary because the alternate had listened to the jury deliberations, but had been instructed to not participate in any way in the jury deliberations.

Second, we are seriously concerned that the jury in the case at bar progressed to a stage where the original eleven jurors were in substantial agreement and, as such, were in a position to present a formidable obstacle to any attempt that the alternate juror might make to persuade and convince the original jurors. *People v. Ryan* (1966), 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710. In essence, the alternate juror, being a newcomer to the proceedings, may have been coerced or intimidated by the other eleven jury members who likely had already formulated positions, viewpoints, or opinions. Such apprehension was deftly observed by the *Corsaro* court, when it reflected that:

" * * * where the deliberative process has progressed for such a length of time or to such a degree that it is strongly inferable that the jury has made actual fact-findings or reached determinations of guilt or innocence, the new juror is likely to be confronted with closed or closing minds. In such a situation, it is unlikely that the new juror will have a fair opportunity to

express his or her views and to persuade others. Similarly, the new juror * * * may be forced to accept findings of fact upon which he or she has not fully deliberated." *Corsaro, supra,* 107 N.J. at 352, 526 A.2d at 1054.

Unlike the cases which have expressed concern about the possible coercive effect a regular jury may have on an alternate, the trial court here failed to use any procedural mechanisms in order to protect appellant's rights. Both *Hillard* and *Phillips* have argued that such dangers may be adequately minimized by careful instructions and supervision from the trial court.[2] As previously noted, the only instruction given to the alternate and the eleven remaining jurors by the trial judge in the present case was that the alternate was now to actively participate in the proceedings. We find that such instruction was not sufficient to negate any possibility of coercion or intimidation.

Next, we agree with appellant's assessment that the jury responsible for determining the final verdict on the open and remaining charge—the reconstituted jury—were not the same trier of fact that determined the prior charges. Here, the loss of one juror from the regular jury and the substitution of a new juror made the resultant jury different from the first jury. Thus, it appears in the present action that appellant was denied "['] * * * the right to have the same trier of the fact decide all of the elements of the charged offense. Unless the same jury is permitted to deliberate meaningfully upon all of the issues that are crucial to a verdict of guilt or innocence * * * a defendant will not have secured the jury right contemplated by the Constitution. * * *['] * * * To the extent that the original individual jurors would inevitably be influenced by their prior determinations, which would carry over into the final verdict[ ] on the open and remaining charge[ ], the final verdict joined in by the new juror could not represent a decision made by the same jury as a result of fresh deliberations on all important aspects of the open charge[ ]." (Emphasis deleted.) *Corsaro, supra,* 107 N.J. at 353–354, 526 A.2d at 1055.

Finally, unlike *Phillips* or *LeFort,* the present case was neither complex nor protracted. *Phillips* and *LeFort* appear to subscribe to the proposition that a juror's substitution should be permitted only in complex cases. The trial in *LeFort* lasted eighteen days, involved twenty-eight witnesses, and over two thousand and three hundred pages of transcript. The *Phillips* trial lasted

---

**2.** In *Phillips,* the trial court used the following procedures in order to protect the appellant's rights: the trial court sequestered the alternate during the preliminary jury deliberations, carefully questioned each juror individually about whether he or she could and would start deliberations anew, and pointedly instructed the jury to begin its deliberations anew. The appellate court found that these precautions, in addition to the continuation of deliberations for an entire week after the alternate was impanelled, negated any possible coercive effect or any undue influence. *Phillips, supra,* 664 F.2d at 996.

over four months, and involved multiple defendants on numerous substantive and conspiracy charges. The trial in the present action lasted only three days, involved eleven witnesses and only four hundred and fifty pages of transcript. Thus, unlike the cases mentioned, the case at bar does not fall squarely within the facts of those decisions permitting substitution of a juror.

Under the facts presented, we find that the possibility of prejudice was so compelling that appellant was denied his right to a trial by jury as set forth in the United States and Ohio Constitutions. Accordingly, we hold that the substitution of a juror, after a partial verdict has been returned, for the purpose of continuing deliberations in order to reach a final verdict on the remaining count was plain error.

For the reasons set forth above, we find appellant's sole assignment of error to be well taken, and it is hereby sustained. Appellant's conviction on the voluntary manslaughter count is hereby reversed and the cause is remanded for a new trial on that particular charge.

*Judgment accordingly.*

KOEHLER, P.J., and WALSH, J., concur.