OPINION
Appellant, Shane R. Elersic, appeals from the March 16, 2000, and September 7, 2000 judgment entries of the Lake County Court of Common Pleas.
In the early morning hours of June 28, 1999, officers of the Geauga County Sheriff's Office investigated a report of a breaking and entering in progress at the St. Denis Golf Course in Chardon ("St. Denis"). The suspects fled the scene in a Red Chevrolet Blazer (the "Blazer"). In the course of the ensuing pursuit, the Mentor Police Department placed stop sticks at the intersection of Routes 615 and 84 in Lake County. The Blazer was disabled when it hit the stop sticks, but the two suspects escaped by running into a wooded area.
A floor safe that had been stolen from St. Denis was recovered from the Blazer. Two bags were also found in the Blazer. One of the bags contained two screwdrivers and a pair of pruning shears. The other bag contained two pairs of pruning shears, a pair of tin snips, a sledgehammer, a screwdriver, a utility knife, and a pair of pliers. Gina Topazio ("Topazio") was identified as the owner of the Blazer. When the police notified Topazio that they had seized the Blazer, she indicated that she believed appellant may have borrowed it the previous night.
Appellant's car, a Mazda MX6 (the "Mazda") was in the parking lot of Topazio's apartment complex at that time. The police seized it, without a warrant, at approximately 1:30 a.m., on June 28, 1999. However, a warrant was obtained later that morning, and a search of the vehicle was conducted. A partial list of the items recovered from appellant's car included: walkie-talkies (subsequently identified as the property of Great Lakes Auto Recycling), a notebook (which contained names of businesses and a rough sketch of at least one business which had been broken into), cotton gloves (subsequently determined to be the property of Concord Nursery), and a bag of coins.
A warrant was issued for the arrest of appellant on July 21, 1999. On September 17, 1999, a nine-count indictment was returned against appellant. He was indicted for three counts of breaking and entering, in violation of R.C. 2911.13, a fifth degree felony; three counts of theft, in violation of R.C. 2913.02, a fifth degree felony; vandalism, in violation of R.C. 2909.05, a fifth degree felony; receiving stolen property, in violation of R.C. 2913.51, a fifth degree felony; and, engaging in a pattern of corrupt activity, in violation of R.C. 2923.32, a second degree felony. The charges stemmed from crimes committed at Concord Nursery, Great Lakes Auto Recycling, and the Red Hawk Grille.[1]
On November 3, 1999, appellant filed a motion to reveal all confidential informants and supporting data and a motion to suppress the results of the search of the Mazda. Both motions were overruled at a November 19, 1999 hearing. On January 28, 2000, three days before the start of the trial, the state filed a motion for leave to amend the indictment with respect to the first two counts of the indictment. The state changed the dates of the break-in at Concord Nursery from May 23-24, 1999, to May 5, 1999. The motion was granted on January 31, 2000, the first day of trial.
The evidence introduced at trial indicated a pattern of alarm systems being disabled prior to the properties being entered. In addition to the evidence discovered in the Mazda, the state's case relied heavily on the testimony of appellant's self-confessed accomplice, Michael Fazzalore ("Fazzalore").
Appellant moved for an acquittal pursuant to Crim.R. 29 at the conclusion of the state's case and at the conclusion of his own case. Both motions were denied.
Jury deliberations began on February 1, 2000. On February 3, 2000, the trial court learned that a number of jurors had been approached in the parking lot on the previous evening by a man who was tentatively identified as appellant's uncle.[2] This event led the trial court to question each juror to ascertain if they could continue to deliberate. As a result of this inquiry, one juror was excused. Appellant's counsel agreed to impaneling an alternate juror.
The jury returned guilty verdicts on the following counts of the indictment: count one, breaking and entering at Concord Nursery; count two, theft from Concord Nursery; count three, breaking and entering at Great Lakes Auto Recycling; count four, theft from Great Lakes Auto Recycling; count eight, receiving stolen property; and, count nine, engaging in a pattern of corrupt activity. The jury returned not guilty verdicts on counts five, six and seven.
Appellant filed a motion for a new trial based on Fazzalore's recanting of his trial testimony. The motion was overruled in a September 7, 2000 judgment entry.
Appellant has filed a timely appeal and raises the following assignments of error:
 "[1.] The trial court erred in denying [appellant's] motion to suppress evidence obtained by the state from the warrantless search of [appellant's] vehicle.
 "[2.] The trial court erred in denying [appellant's] [Crim.R.] 29 motion for [acquittal] on the charge of engaging in a pattern of corrupt activity in violation of [R.C.] 2923.32.
 "[3.] The trial court erred to the prejudice of [appellant] by failing to grant [his] motion to reveal all confidential informants and supporting data.
 "[4.] The trial court erred to the prejudice of [appellant] by allowing the state of Ohio to amend the indictment on the morning of the trial.
 "[5.] Whether the trial court erred to the prejudice of [appellant] in failing to allow him to speak to the court and allow him to terminate his professional relationship with his counsel.
 "[6.] The trial court erred to the prejudice of [appellant] by allowing the state to present evidence of other crimes, wrongs, or acts in contravention of Evid.R. 404(B).
 "[7.] The trial court erred to the prejudice of [appellant] by denying [appellant] due process of law and effective assistance of counsel in violation of the Ohio and United States Constitutions where the trial counsel fell below an objective standard of reasonable representation.
 "[8.] The trial court erred to the prejudice of [appellant] by allowing the prosecuting attorney to make comments during the closing argument which shifted the burden of proof to [appellant].
 "[9.] The trial court erred to the prejudice of [appellant] in convicting him against the manifest weight of [the] evidence.
 "[10.] The trial court erred to the prejudice of [appellant] by denying him his right to a fair and impartial jury.
 "[11.] The trial court erred in denying [appellant's] motion for a new trial where the co-defendant recants his trial testimony."
 In his first assignment of error, appellant argues that the Mazda was illegally seized by Lake County sheriff's deputies from a privately owned parking lot attached to an apartment complex.[3] We agree.
The Mazda was seized on the basis that crimes had been committed between May 12, 1999, and June 16, 1999, which were similar to the crime in connection with which the police were seeking appellant on June 28, 1999. There were no facts which connected the Mazda to any of the earlier crimes or to the events of June 28, 1999, other than appellant's ownership of the vehicle.
When a search is conducted without prior approval by a judge or magistrate, it is per se unreasonable under the Fourth Amendment, unless it is subject to an established exception. Coolidge v. New Hampshire
(1971), 403 U.S. 443, 454-455. In the case sub judice, the state argues that it was justified in making a warrantless seizure of the Mazda pursuant to Chambers v. Maroney (1970), 399 U.S. 42. In Chambers, the four occupants of a blue station wagon were arrested in connection with a gas station robbery. Id. at 44. After the police effectuated the arrest of the occupants, their car was driven to the police station, where a warrantless search of the vehicle was conducted. Id.
In Chambers, 399 U.S. at 51, the court cited Carroll v. United States
(1925), 267 U.S. 132, for the proposition that a search warrant is "unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence, an immediate search is constitutionally permissible." The Chambers court noted that the blue station wagon could have been searched at the time it was stopped because there was probable cause, and the car was movable. Id. at 52. The court concluded that, for constitutional purposes, there is no difference between seizing a car and holding it until the probable cause issue is presented to a magistrate and carrying out an immediate search without a warrant. Id. Therefore, the warrantless search of the blue station wagon at the police station was valid.
The facts of the case at hand differ significantly from those ofChambers. Appellant was not stopped by police while driving his automobile. Instead, appellant's automobile was parked in a residential parking lot at the time it was seized. In Coolidge, 403 U.S. at syllabus, the defendant's car was seized in his driveway, towed to the police station, and subsequently searched without a warrant. At the time that the automobile was seized from the defendant's driveway, the defendant had already been arrested, his wife had been informed by the police that she was required to spend the night elsewhere, and the premises were being guarded by two policemen. Id. at 460-461. The court concluded, therefore, that there were no exigent circumstances to justify the police conducting a warrantless seizure and search. Id. at 464.
The Coolidge court clearly distinguished between an automobile stopped on the open highway and an automobile parked on residential property.Id. at 461, fn. 18. The court observed that trunks, suitcases, briefcases, and bags are just as movable as an unoccupied automobile that is parked on the owner's property and not being used for an illegal purpose. Id. The court continued: "if Carroll * * * permits a warrantless search of an unoccupied vehicle, on private property and beyond the scope of a valid search incident to an arrest, then it would permit as well a warrantless search of a suitcase or a box. We have found no case that suggests such an extension of Carroll." (Citation omitted.)Id. This court agrees that no such extension of Carroll has been made nor would such an extension presently be appropriate.
In Ohio, this issue was addressed by the Twelfth Appellate District inState v. Sprague (Apr. 17, 1989), Clermont App. Nos. 88-05-037 and 88-06-049, unreported, 1989 WL 36301. In Sprague, police towed the defendant's automobile, which was parked in the driveway next to his home. The police had a warrant to search the defendant's home, but did not have a warrant to search the car. Among the factors that the court identified in determining that the seizure of the defendant's car was illegal was that the automobile was parked in the defendant's driveway, and there was no indication that it was being used for illegal purposes at that time. Id. at 3. The court concluded that "absent exigent circumstances, the automobile exception outlined in Carroll * * * does not apply to the warrantless seizure of an automobile from the driveway of a private residence." Id. at 4.
We are particularly concerned in this case by the fact that appellant's car was seized without a warrant, in spite of the fact that the vehicle itself had not yet been tied to any criminal activity. In Sprague, two witnesses had noticed the defendant's car at two separate crime scenes. Here, the vehicle used in the commission of the crime, which led police to identify appellant as a possible suspect in a series of break-ins, was the Blazer owned by appellant's girlfriend. Also, as was noted inSprague, there is no indication that the automobile exception enunciated in Carroll has been extended to automobiles parked in residential driveways. Id.
The Supreme Court observed in Boyd v. United States (1885), 116 U.S. 616,635:
 "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."
 In view of the circumstances of this case, i.e., the police had no evidence connecting appellant's automobile to the commission of a crime at the time it was seized, appellant was not present and, therefore, unable to flee in his car, and the vehicle was located in a residential parking lot, we refuse to extend the Carroll exception to include the warrantless seizure of appellant's automobile. Therefore, appellant's first assignment of error has merit, and the evidence seized during the search of appellant's automobile should have been suppressed.[4]
In his second assignment of error, appellant contends that the trial court improperly overruled his Crim.R. 29 motion for acquittal on the charge of engaging in a pattern of corrupt activity. The first argument that he presents here is that he was improperly convicted of engaging in a pattern of corrupt activity because the state failed to prove that the enterprise involved in the corrupt activity had an existence independent of its criminal actions.
R.C. 2923.32(A)(1) states that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." The term "enterprise" is defined in R.C. 2923.31(C) as "* * * any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." In R.C. 2923.31(E), a "pattern of corrupt activity" is defined as "* * * two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
The corrupt activities identified in R.C. 2923.31(I) include, but are not limited to, violations of R.C. 2911.13, 2913.02 and 2913.51. Appellant was found guilty of violations of all three of those sections of the Revised Code. Appellant's accomplice, Fazzalore, entered pleas of guilty to the charges of breaking and entering at Concord Nursery, Great Lakes Auto Recylcing, and the Red Hawk Grille. Clearly, appellant and Fazzalore were jointly involved in two or more incidents of corrupt activity. Appellant suggests, however, that for there to be a pattern of corrupt activity, the enterprise had to have an existence independent of the criminal activity. We disagree.
In State v. Wilson (1996), 113 Ohio App.3d 737, 742, the Ninth Appellate District noted that "Ohio courts have not required an `enterprise' have an existence separate and apart from the underlying corrupt activity * * *." This principle was applied in State v. Grimm
(1995), 102 Ohio App.3d 356. In Grimm, the defendants were husband and wife. In July 1993, they stole approximately $80,000 worth of bronze cemetery ornaments in the course of at least ten different thefts. Id. at 357. The Second Appellate District concluded that their association for the purpose of stealing cemetery ornaments was sufficient to constitute an enterprise: "[a]n enterprise may certainly be comprised of only two individuals, particularly given that the statute includes one individual within the scope of an enterprise." Id. at 358.[5]
In his second argument concerning the overruling of his Crim.R. 29 motion, appellant suggests that he was charged with a pattern of corrupt activity without having been formerly charged with a predicate offense. R.C. 2923.31(E) states that "* * * at least one of the incidents forming the pattern [of corrupt activity] shall constitute a felony under the laws of this state in existence at the time it was committed * * *." In this case, appellant was convicted of committing five of the felonies with which he had been charged, not including his conviction for engaging in a pattern of corrupt activity. His accomplice, Fazzalore, entered pleas of guilty to at least two of those crimes. Therefore, we fail to comprehend appellant's position that he was not formerly charged with a predicate offense.[6] For the foregoing reasons, appellant's second assignment of error lacks merit.
In his third assignment of error, appellant contends that he was improperly denied access to the name of a confidential informant. We disagree.
In making his argument, appellant relies, in part, on Crim.R. 16(B)(1)(e), which requires that, upon motion of the defendant, the prosecutor must furnish him with a "* * * written list of the names and addresses of all witnesses whom the prosecuting attorney intends to callat trial * * *." (Emphasis added.) In the case at hand, there is no indication that the prosecution intended to call, as a witness, the informant whose name it refused to reveal. Therefore, Crim.R. 16(B)(1)(e) is not applicable in this case.
With respect to the withholding of an informant's name, if that informant will not be called as a witness at trial, "[i]t is not reversible error on the part of a trial court to refuse to order the disclosure of the identity * * * where such disclosure would not be helpful and beneficial to the accused in making a defense to a criminal charge lodged against him." State v. Beck (1963), 175 Ohio St. 73, paragraph two of the syllabus. "The defendant bears the burden of establishing the need for learning the informant's identity." State v.Richard (Sept. 7, 2000), Cuyahoga App. No. 76797, unreported, 2000 WL 1281254, at 6. We will not reverse the trial court's decision to deny the request for disclosure of the informant's identity absent an abuse of discretion. Id.
An important factor in determining whether an informant's testimony would be beneficial to the accused in preparing his defense is the extent to which the informant participated in the conduct underlying the charges against the accused. State v. Parsons (1989), 64 Ohio App.3d 63, 67. In cases where the informant did not actively participate in the criminal activity, courts have consistently held that disclosure of his identity is not required. Id. at 67-68; State v. Bays (1999), 87 Ohio St.3d 15,25. In the instant case, there is no evidence to suggest that the state's confidential informant was an active participant in any of the crimes allegedly committed by appellant.
The issue of revealing all confidential data pursuant to appellant's motion was addressed at a November 19, 1999 hearing. At that hearing, appellant's counsel argued that the informant would provide information that would allow the defense to impeach Fazzalore concerning inconsistencies in the information he provided to the police. The prosecutor responded that, in the course of discovery, he had made full and complete disclosure of the information provided by the informant and that the only information that the state possessed, which had not been provided to appellant, was the identity of the informant. The prosecutor stated at the hearing that "[t]here is nothing with respect to those reports [of] the information provided by the confidential informant [that could] not otherwise be obtained from other sources of information that are disclosed in discovery response." Appellant argued in response that there may be exculpatory evidence of which the state was not aware.
Prior to denying appellant's motion to reveal all confidential informants and supporting data, the trial court noted that the state had provided appellant with all of the information in its possession regarding the informant, with the exception of his name. The trial court further suggested that the confidential informant would assist appellant in his defense only if he was a favorable witness and that as a certified confidential informant, he was unlikely to be a favorable witness for the defense.
Given the circumstances of this case, we do not find that the trial court abused its discretion in denying appellant's request for the identity of the informant. Appellant was made aware of the inconsistencies in Fazzalore's statements that were brought to the attention of the police by the informant, and the informant was not involved in the underlying criminal activity. Therefore, it was not unreasonable for the trial court to conclude that appellant failed to meet his burden of establishing the need for knowing the informant's identity. For the foregoing reasons, appellant's third assignment of error is not well-taken.
In his fourth assignment of error, appellant suggests that the trial court erred by permitting the state to amend its indictment on the morning of the trial. We agree.
Generally, an indictment is sufficient if it contains a statement that the accused has committed a public offense specified therein. State v.Sellards (1985), 17 Ohio St.3d 169, 170-171. Dates and times are not typically essential elements of an offense; therefore, the failure to provide specific dates and times in an indictment will not cause the indictment to be insufficient. Id. at 171. Describing when the criminal conduct occurred in an indictment or bill of particulars is generally irrelevant to the preparation of a defense because the defendant is expected to conduct discovery. State v. Stepp (1997), 117 Ohio App.3d 561,565. The "* * * failure to disclose known dates is fatal to a prosecution only if the absence of specifics prejudices the accused's ability to fairly defend herself." Id. at 566, citing Sellards,17 Ohio St.3d at 172. However, if the defendant has filed an alibi defense based on the dates contained in the indictment and subsequent bill of particulars, and those dates are inaccurate, he will have suffered a material detriment in the preparation of his defense. See State v.Barnecut (1988), 44 Ohio App.3d 149, 152; Stepp, 117 Ohio App.3d at 566;Sellards, 17 Ohio St.3d at 172.
In the case sub judice, counts one and two of the indictment state that appellant broke into Concord Nursery between May 23 and 24, 1999. Appellant moved for a bill of particulars and specifically requested the date and time of each occurrence. The state responded to appellant's motion by asserting that all relevant information was contained in police reports which had already been forwarded to appellant's attorney. On January 24, 2000, appellant filed a notice of alibi for the period of time between May 23 and May 24, 1999, when the break-in at Concord Nursery occurred. Further, there were two break-ins at Concord Nursery in May 1999. The first occurred on May 5. The second occurred between May 23 and May 24. On both occasions, work gloves and money were taken. However, the May 5 break-in also involved the theft of a pair of pruning shears.
The state filed a motion to amend its indictment on Friday, January 28, 2000. The amendment changed the dates in the first two counts of the indictment from May 23-24, to May 5. The trial began on Monday, January 31, 2000. The state argued in its motion to amend that such an amendment would not change the identity of the crime. We cannot agree. There were virtually identical crimes committed on May 5, 1999, and May 23-24, 1999. The location was the same, and the items stolen were substantially the same. The state cannot indict a defendant for a crime that occurred on one date, and, after the defendant has filed a notice of alibi for that date, amend the indictment for the purpose of charging him with an entirely different crime on a different date. The circumstances were particularly egregious in this case because the amended indictment was filed on a Friday, with the trial set to commence the following Monday.
This is not a situation where the state simply made a typographical error or where the state lacks precise information with respect to the date on which the crime occurred. Nor is this a case where the discovery process would have made it clear as to the date on which the alleged incident occurred. Instead, two crimes were committed on separate dates. The state chose to indict appellant for the May 23-24, 1999 crime. The state then amended the indictment on the eve of trial and tried appellant on the May 5, 1999 crime. Therefore, the amendment of the indictment created a material detriment for appellant in the preparation of his defense. For the foregoing reasons, appellant's fourth assignment of error is well-taken.
In his fifth assignment of error, appellant argues that the trial court erred to the prejudice of appellant by refusing to allow him to speak to the court immediately upon his request and by refusing to allow him to dismiss his attorney. We agree.
In order to substitute counsel during the trial, the defendant must show good cause, such as an irreconcilable difference, a conflict of interest, or a complete breakdown in communications with his attorney.State v. Pruitt (1984), 18 Ohio App.3d 50, 57. If a defendant questions the efficacy of his counsel, the court has a duty to inquire into the complaint. State v. King (1995), 104 Ohio App.3d 434, 437. "The inquiry may be brief and minimal, but it must be made." Id. "Even that limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further. * * * Failure to inquire into specific allegations constitutes an error as a matter of law." (Citation omitted.) State v. Carter (June 18, 1998), Lawrence App. No. 98CA5, unreported, 1998 WL 337076, at 2.
In this case, appellant requested to speak to the trial judge at the beginning of the second day of trial. At the first break in the proceedings, the trial judge then allowed appellant to speak. Appellant explained that he had attempted to hire a new attorney, but the attorney had been denied access to him. Appellant also indicated that he "had suspicions" about his then current attorney. The trial judge replied, in part:
 "Now I don't know what it is that you're trying to bring to my attention except that I assume from what Mr. Perez has told me this morning before we started that you're for one reason or another unhappy with him and you'd like to have another lawyer, we're in the middle of trial, the prerogative of hiring and firing lawyers for you has long past (sic). We're not going to hire a new lawyer to start all over again."
 While appellant never clearly stated his reasons for wanting to hire a new attorney, the trial court had a duty, at a minimum, to inquire as to appellant's "suspicions" to see if appellant could articulate good cause as to why he should be allowed to hire a new attorney. In his statement to the court, appellant had raised his concerns about being denied access to his proposed new attorney. He was not given the opportunity to fully explain his concerns about his then current counsel. To deny appellant the opportunity to articulate his concerns about his counsel was error on the part of the trial court. For the foregoing reasons, appellant's fifth assignment of error is well-taken.In his sixth assignment of error, appellant propounds that the trial court erred by permitting the state to present evidence of other crimes perpetrated by appellant. Fazzalore testified to three incidents for which no charges were brought against appellant: (1) that appellant had threatened to kill him and his family if he testified against him; (2) that he and appellant broke into the Hillwick home; and (3) that they broke into St. Denis.
Evid.R. 404(B) states that: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person * * *. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity * * *." (Emphasis added.) "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime." State v. Smith (1992), 84 Ohio App.3d 647,666. For the state to introduce evidence of other crimes to prove identity, "[t]here must be some similarity of methodology employed which itself would constitute probative evidence of the probability that the same person * * * committed both crimes. In such event, eye-witness proof of the identity of the perpetrator of the prior offense is relevant proof on the issue of the identity of the perpetrator of the offense in question." State v. Hector (1969), 19 Ohio St.2d 167, 177.
With respect to the threats appellant allegedly made against Fazzalore, the state has offered no justification for this testimony in its appellate brief, and this court is unable to discern the relevance of this testimony to proving that appellant committed the crimes for which he was indicted. Therefore, we conclude that the trial court erred in admitting this testimony over appellant's objection.
In connection with the break-ins at the Hillwick residence, Fazzalore testified that when appellant broke into the private residence, he dismantled the alarm system and cut a cable that could have been connected to a cellular alarm. His testimony concerning the St. Denis break-in, was that appellant had cut the phone lines and ripped an alarm off the wall. The same methods of disabling alarm systems were used in the break-ins at Great Lakes Auto Recycling and the Red Hawk Grille, break-ins for which appellant was indicted and tried. Consequently, Fazzalore's testimony is potentially admissible to prove identity by establishing a modus operandi applicable to the crimes with which he was charged. State v. Lowe (1994), 69 Ohio St.3d 527, 531. In State v.Jamison (1990), 49 Ohio St.3d 182, 186, the Supreme Court of Ohio held that testimony concerning other robberies was admissible to prove identity when all of the robberies occurred from June 18 to October 12, 1984, in the downtown area of Cincinnati; the robberies occurred on weekday afternoons; the businesses that were robbed had street-level entrances; only one or two people were present at the time of the robberies; and, the victims were knocked or thrown to the floor.
In the instant case, the only aspect of the Hillwick break-in that connects it to the break-ins with which appellant has been charged is that wires that may have been connected to an alarm were cut. While it is true that appellant disabled alarm systems in the break-ins for which he was indicted, this court would anticipate that any experienced thief or inexperienced thief who had watched enough heist movies would be apt to do the same. As a result, this court concludes that the testimony regarding the Hillwick break-in was inadmissible.
During the St. Denis break-in, pry tools were used, phone lines were cut, and the safe was taken. The state asserts that substantially similar methods were used in the course of the break-in at Great Lakes Auto Recycling. We agree that the state established that the modusoperandi used in the two break-ins was sufficiently similar that the evidence of appellant's involvement in the St. Denis break-in was admissible pursuant to Evid.R. 404 to show identity.
For the foregoing reasons, appellant's sixth assignment of error is well-taken with respect to the admissibility of the evidence regarding threats appellant may have made against Fazzalore and with respect to his involvement in the Hillwick break-in. Fazzalore's testimony concerning these events should not have been admitted into evidence. However, appellant's sixth assignment of error is not well-taken with respect to the St. Denis break-in. The state used Fazzalore's testimony to demonstrate appellant's modus operandi. That testimony had probative value for the purpose of identifying appellant as a participant in the Great Lakes Auto Recycling break-in.
In his seventh assignment of error, appellant contends that he received ineffective assistance of counsel. We disagree.
For appellant to succeed on his claim of ineffective assistance of counsel, he must show that (1) his counsel's performance was deficient, and (2) that he was prejudiced by his counsel's deficient performance.State v. Bradley (1989), 42 Ohio St.3d 136, 141; State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, 1996 WL 761161, at 12. When considering whether counsel's performance was deficient, we work from the presumption that his conduct is within the range of reasonable professional assistance. Bradley, 42 Ohio St.3d at 142. To show that he has been prejudiced by his counsel's deficient performance, appellant must demonstrate a reasonable probability that the result of the trial would have been different, but for his counsel's errors. Id. at 143.
Appellant cites three instances where he believes he received ineffective assistance of counsel: first, that counsel failed to call witnesses at the November 19, 1999 suppression hearing and failed to challenge the seizure of appellant's vehicle; second, that counsel failed to object to the testimony of Deputy Frank Fila ("Fila") and Detective Justin McNabb regarding the break-in at St. Denis; and, third, that counsel failed to object to the questioning of the jurors conducted by the trial judge to determine if they had been influenced by the incident that had occurred in the courthouse parking lot.
With respect to the events of the suppression hearing, we would note that trial counsel vigorously contested the validity of the search of appellant's car. He argued that the affidavit, which provided the factual basis for the issuance of the search warrant for the car, did not contain sufficient information to give rise to probable cause. While, in hindsight, it would seem apparent that his efforts would have been better spent challenging the illegal seizure of the car, his failure to more fully contest the seizure of the car did not place his conduct outside the range of reasonable assistance.
As for the other two incidents mentioned by appellant, we will not address the effectiveness of appellant's trial counsel's assistance in handling those matters because we believe that regardless of how those issues were treated, the result of the trial would have been the same. Certainly, appellant has failed to propound a theory of how he was prejudiced by his counsel's trial methodology with respect to those issues. For the foregoing reasons, appellant's seventh assignment of error lacks merit.
In his eighth assignment of error, appellant argues that the trial court permitted the prosecutor to make improper statements in his closing argument. We disagree.
In their closing arguments, prosecutors cannot intentionally mislead the jury by means of improper remarks. Sidney v. Walters (1997),118 Ohio App.3d 825, 830. "Specifically, the prosecutor must avoid expressing personal beliefs or opinions as to a defendant's guilt and should refrain from commenting upon matters that are not in evidence or drawing inferences that are not supported by the evidence." Id. Four factors should be considered in determining whether prosecutorial misconduct affected any substantial rights of the defendant: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." Id. at 829. Prosecutorial misconduct, in and of itself, "* * * is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial." State v. Coffman (1998), 130 Ohio App.3d 467,471.
The first comment challenged by appellant was the prosecutor's statement "they're going to have a hard time explaining away some of the coincidences * * * that occurred in the particular case." Appellant argues that this amounts to burden shifting on the part of the prosecutor. While we agree that this comment was inappropriate, we would note that appellant did not object at trial. Further, because the trial court gave a proper instruction on the burden of proof in criminal cases, the comment did not rise to the level of plain error. State v.Allen (1995), 102 Ohio App.3d 696, 702.
The second comment challenged by appellant was that Fazzalore "came in here at great risk told basically what happened, was very detailed, appeared to me to be very honest, that's your determination * * *." We agree that this comment was inappropriate, but, once again, trial counsel failed to object. Further, we conclude that even absent this comment, the jury would have found appellant guilty beyond a reasonable doubt. Therefore, the comment constituted harmless error. For the foregoing reasons, appellant's eighth assignment of error lacks merit.
In his ninth assignment of error, appellant suggests that his conviction for receiving stolen property was against the manifest weight of the evidence. We disagree.
In determining whether a verdict is against the manifest weight of the evidence, "we review the entire record, weigh all the evidence and reasonable inferences stemming therefrom, and consider the credibility of the witnesses." State v. Beaver (1997), 119 Ohio App.3d 385, 398; Statev. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 1994 WL 738452, at 5. The trier of the facts has the primary responsibility for determining the "* * * weight to be given the evidence and the credibility of the witnesses * * *." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. After we conduct our review of the record, if we determine that the jury lost its way, we reverse the conviction. Beaver, 119 Ohio App.3d at 398.
In this case, Douglas Tenney ("Tenney") testified that his house was broken into on April 25 or 26, 1999. He further testified that a Colt .357, which he identified in court, was stolen at that time. James Gridiron, Jr. ("Gridiron") also identified the Colt .357 in court. Gridiron had purchased the gun from appellant's brother, Jeremy Elersic ("Jeremy"). The purchase was conducted in front of Gridiron's house. Jeremy was seated in the passenger's side of appellant's car, and appellant was driving. The transaction was conducted while appellant and Jeremy remained seated in the car. Fazzalore testified that he had seen the Colt .357 at appellant's home and that appellant had told him that he had obtained a number of guns, including the Colt .357, in the course of robbing Tenney's house. Based on the record before us, we cannot conclude that the jury lost its way in finding appellant guilty of receiving stolen property. For the foregoing reasons, appellant's ninth assignment of error lacks merit.
In his tenth assignment of error, appellant contends that he was denied his right to a fair and impartial jury. We agree.
The first issue raised by appellant under this assignment of error is that the trial court improperly impaneled an alternate juror after the jury had reached a conclusion on the number of counts. In State v.Miley (1991), 77 Ohio App.3d 786, 791-793, the Twelfth Appellate District held that where jury deliberations have progressed to the point where the jurors are in substantial agreement, and an alternate juror is then substituted for one of the original jurors, the trial court must instruct the jury to begin its deliberations anew. The purpose of such instruction is to negate any possibility of coercion or intimidation of the substitute juror. Id.
In the case sub judice, the jurors had already reached verdicts on seven of the nine counts of the indictment. After a decision had been reached to appoint an alternate juror (a decision agreed to by appellant's counsel), the trial judge gave the following instruction to the jury:
 "Now from this point on you are to continue your deliberations, [the alternate juror] is to have the benefit of determining whichever counts of the indictment and if it's necessary to redo all that you have accomplished up to this point you must do that in deference to her position. Keeping in mind that she has not had the benefit of your discussions up to this point."
 The implication of this instruction was that the other members of the jury were to revisit the seven counts, on which they had already reached a verdict, only if the alternate requested or insisted that they do so. We do not believe that this instruction was sufficient to negate the possibility of the alternate being coerced by the other members of the jury into simply accepting their verdict on the seven counts upon which a decision had already been reached. Instead, the instruction should have been for the jury to begin deliberations anew, particularly since the alternate juror had not been present for the first day of deliberations. Under these circumstances, the possibility of prejudice was so great that appellant was effectively denied his right to a trial by jury as set forth in the Ohio Constitution. Although appellant's counsel failed to object to these proceedings, we conclude that, in view of Miley, the trial court's actions in this instance rise to the level of plain error. For the foregoing reasons, appellant's tenth assignment of error is well-taken.
In his eleventh assignment of error, appellant contends that the trial court erred by denying appellant's motion for a new trial after Fazzalore recanted his trial testimony.[7] We disagree.
When a prosecution witness recants his testimony, the trial court must make two determinations: "* * * (1) which of the contradictory testimony offered by the recanting witness is credible and true, and if the recanted testimony is to believed (sic); (2) would the evidence materially affect the outcome of the trial?" Toledo v. Easterling
(1985), 26 Ohio App.3d 59, 62. Before we will overturn the trial court's ruling on the motion for a new trial, there must be a clear showing of abuse of discretion. State v. Kinney (Aug. 21, 1998), Lake App. No. 97-L-034, unreported, 1998 WL 637515, at 6.
In this case, appellant's motion for a new trial was heard on August 10, 2000. In the absence of a transcript of the hearing, we presume that the trial court determined that Fazzalore's testimony at trial was true and that his recantation was not to be believed. On the basis of this presumption, we conclude that the trial court did not abuse its discretion. For the foregoing reasons, appellant's eleventh assignment of error is not well-taken.
In view of our conclusions with respect to appellant's first, fourth, fifth, sixth and tenth assignments of error, this matter is reversed and remanded for further proceedings consistent with this opinion.
PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., concurs with Concurring Opinion, NADER, J., concurs.
[1] Appellant was never charged in connection with the breaking and entering at St. Denis.
[2] This court cannot determine from the record that any specific threats were made, nor is it clear as to what this individual's intentions were.
[3] Appellant did not directly challenge the constitutionality of the seizure of the car at the suppression hearing, which raises the question of whether he waived the issue. Although appellant did not directly challenge the constitutionality of the seizure, he did assert that there was insufficient probable cause to justify the issuance of a warrant to search the car. In our view, because the issue of probable cause is at the heart of the constitutionality of both the search and seizure of the car, appellant brought the issue to the attention of the trial court in a manner sufficient to preserve the issue for appeal. We would also note the following: the state has not suggested that appellant waived the issue; the state was not unaware of the probable cause issue, since it was explored at great length at the suppression hearing; and, the evidence upon which appellant relied to make his argument was provided by the testimony of the state's witnesses at the suppression hearing. Therefore, we are unable to discern any prejudice to the state by addressing this issue on appeal.
[4] The following items were recovered from appellant's automobile after it had been illegally seized and were improperly admitted into evidence at trial: three walkie-talkies; a notebook containing a map of Great Lakes Auto Recycling; gloves that were the property of Concord Nursery; a hip pack containing a magazine for a .40 caliber Glock; and a bag of coins.
[5] In Wilson, 113 Ohio App.3d at 742, the court cited United Statesv. Turkette (1981), 452 U.S. 576, 583 for the proposition that under the federal RICO law, an "enterprise" is "`an entity separate and apart from the pattern of activity in which it engages.'" As we stated above, Ohio has not adopted the federal approach which requires that the enterprise have an existence separate from the pattern of corrupt activity.
[6] Appellant argued, in his brief, before this court that because the jury considered the events relating to the St. Denis break-in, he "was convicted of a RICO violation whereby he was not formerly charged with a predicate offense." As far as this court can determine, this is a non sequitur.
[7] Appellant has filed two separate appellate briefs, under separate case numbers. For purposes of this appeal, the cases have been consolidated. The assignment of error which is being treated as appellant's eleventh assignment of error was originally the sole assignment of error in his brief for Lake App. No. 2000-L-164.